**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 25 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOMINION VIDEO SATELLITE,
INC.,

Plaintiff-Appellee,

v.

No. 01-1084

ECHOSTAR SATELLITE
CORPORATION; ECHOSPHERE
CORPORATION,

Defendants-Appellants.

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 01-K-206)

Submitted on the briefs:

R. Nicholas Palmer, R. Nicholas Palmer Attorney at Law, L.L.C., Denver,
Colorado; Mark D. Colley, Holland & Knight, L.L.P., Washington, D.C., for
Plaintiff-Appellee.

Todd Jansen, Cockrell, Quinn & Creighton, Denver, Colorado; Mark A. Nadeau,
Cynthia A. Ricketts, Squire, Sanders & Dempsey, L.L.P., Phoenix, Arizona; T.
Wade Welch, Ross W. Wooten, T. Wade Welch & Associates, Houston, Texas,
for Defendants-Appellants.

Before **MURPHY**, **BALDOCK**, Circuit Judges, and **VAN BEBBER**,[*] Senior District Judge.

_____

**MURPHY**, Circuit Judge.

_____

## I. INTRODUCTION

This interlocutory appeal arises from a contract dispute based on diversity jurisdiction that is currently in arbitration. Plaintiff-appellee Dominion Video Satellite, Inc. ("Dominion") brought a motion for a temporary restraining order and preliminary injunction in the United States District Court for the District of Colorado against defendants-appellants EchoStar Satellite Corporation and Echosphere Corporation (collectively "EchoStar"). After a hearing, the district court entered a temporary restraining order and preliminary injunction against EchoStar and set bond at $10,000. Both the district court and this court denied EchoStar's motions to stay the injunction pending appeal and to increase the bond. This court has jurisdiction under 28 U.S.C. § 1292(a)(1).[1]

_____

[*]Honorable G. Thomas Van Bebber, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

EchoStar raises three issues on appeal. First, it claims the district court violated its due process and procedural rights by failing to give sufficient notice before granting appellee's preliminary junction. Second, addressing the merits, EchoStar argues that the court abused its discretion in issuing the preliminary injunction. Finally, EchoStar contests the amount of the bond set by the district court. Because this court concludes that the district court did not abuse its discretion in giving notice of the hearing or in issuing injunctive relief, it **affirms** the preliminary injunction order, but **remands** to the district court for factual findings as to the appropriate bond amount.

## II. FACTUAL BACKGROUND

EchoStar owns and operates satellites and transmits direct broadcast programming under the "DISH Network" trade name. Dominion is a television and radio broadcaster of predominantly religious programming that operates the Sky Angel network.

Each of EchoStar's satellites houses multiple transponders, or devices that receive broadcast transmissions from Earth and retransmit them to individual dish antennas. Pursuant to a July 18, 1996 contract, EchoStar leased eight transponders on its satellites to Dominion for satellite broadcasting. In consideration, Dominion agreed to pay EchoStar cash fees and lease back three of the eight transponders to EchoStar. In addition, the contract provides for several

offsets against Dominion's cash payments to EchoStar if certain conditions were met.

The contract defines a "Dominion Member" as a "Qualifying Residential Subscriber" ("QRS") meeting several requirements. A QRS, in turn, is an individual who purchases a receiver from EchoStar, orders a minimum level of programming from the DISH Network, and is a first-time subscriber. The term "Dominion Member" appears in several instances in Article 6.3 of the contract, which addresses "Offset of Cash Fees." "Dominion Member" also appears in Article 5.2.2, the provision governing "Dominion's Fulfillment Services."

Two other contract provisions are relevant in this case. Article

16.15 includes a non-waiver provision.[2] Article 16.8 includes an arbitration

provision.

EchoStar and Dominion signed an amendment to the contract on December

9, 1996. The amendment includes a provision that, if Dominion did not make

certain payments to EchoStar, Dominion would automatically sublease three

additional transponders back to EchoStar. In that event, Dominion would not

have to pay certain cash fees, nor would it be entitled to "any further Offsets."

[2] "16.15. No Implied Waiver. Neither the waiver by a party of a breach of or a default under any of the provisions of this Agreement, nor the failure of a party, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right, remedy, or privilege hereunder, shall thereafter be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any such provisions, rights, remedies, or privileges hereunder. No failure or delay on the part of a party in exercising any right, power, or privilege hereunder, and no course of dealing between the parties, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. No change, waiver or discharge hereof shall be valid unless in writing and signed by an authorized representative of the party against whom such change, waiver or discharge is sought to be enforced. A waiver by any party of any of the covenants, conditions, or contracts to be performed by the other or any breach thereof shall not be construed to be a waiver of any succeeding breach thereof or of any other covenant, condition, or contract herein contained. No change, waiver, or discharge hereof shall be valid unless in writing and signed by an authorized representative of the party against such change, waiver, or discharge is sought to be enforced."

Dominion elected not to make the specified payments to EchoStar, and the amendment became effective sometime before the current dispute arose.

Individuals wishing to view Sky Angel or DISH Network programming must first purchase and install a DISH Network receiver. The customer cannot view programming on either the DISH Network or Sky Angel unless EchoStar activates the customer's DISH Network receiver. Since the inception of Dominion's broadcasts of Sky Angel programming, those individuals who wanted to subscribe to Sky Angel contacted Dominion to order service. Dominion, in turn, contacted EchoStar to activate that particular customer's satellite dish.

On January 26, 2001, EchoStar sent Dominion a letter which stated, in part, that EchoStar would not activate any Dominion subscribers unless they purchased a minimum level of DISH Network programming, an unsubsidized satellite receiver directly from EchoStar, or a Dominion-specific smart card. The stated purpose of EchoStar's demands was to remedy the "problem" of "Dominion subscribers [] receiving subsidized prices without fulfilling their commitment to EchoStar which would make them eligible for those subsidies."

EchoStar views the January 26 letter as an attempt to enforce the QRS criteria in the original contract. Dominion contends, however, that the letter represents EchoStar's unauthorized attempt to impose new requirements before activating Dominion subscribers. The parties do not dispute that, before

EchoStar's demand letter on January 26, 2001, EchoStar activated new Dominion subscribers without enforcing the QRS criteria.

On February 5, 2001, Dominion simultaneously filed a complaint and a "Motion for Temporary Restraining Order and/or Preliminary Injunction" in the United States District Court for the District of Colorado requesting that the court enjoin EchoStar from refusing to activate Dominion subscribers or from imposing the conditions set out in the January 26 letter. On the same day, Dominion faxed to EchoStar a notice of election of arbitration on several issues, including the activation of Dominion subscribers.

The hearing for injunctive relief took place on February 8. At the conclusion of the hearing, the district court orally issued a temporary restraining order against EchoStar and set the bond at $10,000, which Dominion duly submitted. Later that day, the district court entered the written order for a temporary restraining order and a preliminary injunction.

This appeal followed. The parties are currently in arbitration with hearings scheduled to begin on October 24, 2001.

## III. DISCUSSION

### A. Standards of Review

This court reviews the grant of a preliminary injunction for abuse of discretion. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1243 (10th Cir. 2001). A district court abuses its discretion if it "commits an error of law, or is clearly erroneous in its preliminary factual findings." *Id.* A preliminary injunction will be set aside for abuse of discretion if the district court applied the wrong legal standard in deciding to grant a motion for a preliminary injunction. *See SCFC ILC, Inc. v. Visa, USA Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). This court reviews the issuance of a bond for abuse of discretion. *See Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 783 (10th Cir. 1964).

### B. Notice of Preliminary Injunction

On appeal, EchoStar claims the district court violated its due process rights by failing to give adequate notice that it was conducting a hearing for a preliminary injunction.[3] EchoStar does not argue on appeal that it lacked adequate notice for a temporary restraining order hearing. Rather, EchoStar asserts that the one business day notice of the hearing was not enough time to

---

[3] The record before this court does not disclose whether EchoStar raised this argument in the district court. Because it does not affect our holding, this court will assume without deciding that EchoStar properly preserved the issue for appeal. *See Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 n.2 (10th Cir. 1999).

prepare for a preliminary injunction hearing or conduct meaningful discovery. EchoStar asks this court to adopt the Fifth Circuit rule that imports the five business day notice requirement of Rule 6(d) of the Federal Rules of Civil Procedure into Rule 65(a)(1) hearings governing preliminary injunctions.[4] *See Parker v. Ryan*, 960 F.2d 543, 544-45 (5th Cir. 1992).

Rule 65(a)(1) provides, in relevant part, that "[n]o preliminary injunction shall be issued without notice to the adverse party." Neither the Rule nor the advisory committee notes specify the form or amount of notice required. This court has not addressed the issue in a published opinion.

The district court did not abuse its discretion in setting the preliminary injunction hearing three days after Dominion filed its motion for injunctive relief. On February 5, 2001, Dominion filed a "MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION." At the very least, EchoStar thereby had notice that Dominion alternatively sought a preliminary injunction. Dominion also served notice of hearing on EchoStar on February 6. EchoStar never objected to the hearing date nor did it ask for more time to prepare. Indeed, EchoStar filed a written brief in opposition to the

---

[4] Rule 6(d) provides, in pertinent part: "A written motion . . . and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court." Weekends are excluded from the five-day computation. *See* Fed. R. Civ. P. 6(a).

request for injunctive relief two days after Dominion filed the motion and one day after EchoStar was notified of the hearing date. In addition, EchoStar attached the declaration of Polly Dawkins, an EchoStar employee, in its brief opposing injunctive relief, thus indicating that it had enough time to include papers in support of its brief in opposition. Nothing in the record indicates that EchoStar directly or indirectly alluded to a notice problem in its brief in opposition. Furthermore, the record of the district court proceedings indicate that EchoStar conducted a thorough defense at the hearing. EchoStar argued its case at the hearing and conducted an extensive cross and re-cross examination of Robert Johnson, the chairperson and chief executive officer of Dominion and the sole witness at the hearing. Although EchoStar asserts that the district court repeatedly referred to the hearing as only one for a temporary restraining order, the transcript of the hearing reveals that the district court referred to the relief sought as a preliminary injunction at least once. *See* Appellant App. at 152.

Even if this court were to accept EchoStar's argument that the district court failed to give adequate notice for the preliminary injunction hearing, EchoStar must still demonstrate that the error was prejudicial. *See United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986). EchoStar does not, however, explain how its argument or evidence would have been materially different with more notice. *See id.* Instead, it asserts most generally that it would have called

unidentified witnesses and conducted a more rigorous cross examination. EchoStar does not indicate the substance, matter, or source of any additional evidence, or how any such evidence would have affected the outcome.

Nothing in the Federal Rules of Civil Procedure suggests that this court superimpose the five-day requirement of Rule 6(d) into the notice provision of Rule 65(a)(1). The Fifth Circuit has adopted this approach. *See Harris County, Tex. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 326 (5th Cir. 1999) ("[N]otice under Rule 65(a)(1) *should* comply with Rule 6(d). . . ." (emphasis added)); *Parker*, 960 F.2d at 544. Other circuits, however, have not. *See, e.g.*, *Anderson v. Davila*, 125 F.3d 148, 156-57 (3d Cir. 1997); *Ill. ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989); *Alabama*, 791 F.2d at 1458. Indeed, courts addressing the issue have stated that the sufficiency of Rule 65(a)(1) notice is within the district courts' discretion. *See, e.g.*, *Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000); *Peters*, 871 F.2d at 1340; *Alabama*, 791 F.2d at 1458. Under these circumstances, this court declines EchoStar's invitation to adopt the Fifth Circuit's interpretation of Rule 65(a)(1). Accordingly, the district court did not abuse its discretion in its notice to EchoStar of the preliminary injunction hearing.

## C. Preliminary Injunction

Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065-66 (10th Cir. 2001). Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal. *See Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

For certain preliminary injunctions, the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction. *See id*. The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory rather than prohibitory, or (3) provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *Id.* This court disfavors such injunctions. *See SCFC*, 936 F.2d at 1098.

1. Applicability of Heightened Burden Standard for Disfavored Preliminary Injunctions

EchoStar argues that the district court erred in not applying the heightened burden for disfavored injunctions. According to EchoStar, the preliminary injunction disturbed the status quo, was mandatory, and provided Dominion with substantially all the relief it could have recovered at trial.

EchoStar first contends that the preliminary injunction altered the status quo between the parties because the injunction forced EchoStar to activate new, non-QRS Dominion subscribers and incur additional financial losses from these activations. EchoStar apparently asks this court to confine the status quo to the four days that preceded the filing of the motion for injunctive relief, after EchoStar demanded that Dominion meet the conditions of the January 26 letter.

In *SCFC*, this court explained that the status quo is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *SCFC*, 936 F.2d at 1100 n.8 (citation and quotation marks omitted). In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights. *See id.* at 1100.

Here, the last uncontested status of the parties was the four years in which EchoStar activated Dominion subscribers regardless of whether the subscriber had met the QRS criteria. Even if EchoStar had the *legal* right under the contract to

refuse activating new, non-QRS Dominion subscribers, the *reality* was that EchoStar activated Dominion subscribers whether or not they qualified for QRS status.

Thus, EchoStar's contention that the status quo was defined immediately before the action is unavailing. Not only is this status contested by Dominion, but it is the impetus for this litigation and the pending arbitration. Adopting EchoStar's position would imply that any party opposing a preliminary injunction could create a new status quo immediately preceding the litigation merely by changing its conduct toward the adverse party. To treat such a new status quo as the relationship which an injunction should not disturb would unilaterally empower the party opposing the injunction to impose a heightened burden on the party seeking the injunction. This court declines to extend the definition of the status quo to invariably include the last status immediately before the filing for injunctive relief.

Similarly, this court concludes that the district court did not abuse its discretion in resolving that a heightened burden was inapplicable because the injunctive relief here is not mandatory, but prohibitory. EchoStar asserts that the injunction forces it to take affirmative action to activate new Dominion subscribers. The injunction, however, prohibits EchoStar from refusing to activate new Dominion customers on the same terms and conditions previously

applicable. It does not compel EchoStar to do something it was not already doing during the last uncontested period preceding the injunction.

Nor has EchoStar persuaded this court that the preliminary injunction affords Dominion substantially all the relief which it might be entitled after a full trial on the merits. This court has recently explained that

> [t]he only reason to disfavor a preliminary injunction that grants substantially all the relief sought is if it would render a trial on the merits largely or completely meaningless. Therefore, all the relief to which a plaintiff may be entitled must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone.

*Potawatomi Indians*, 253 F.3d at 1247 (citation and internal quotation marks omitted). Here, the effect of the preliminary injunction can be unwound by means of an award of damages if EchoStar prevails at a trial on the merits. Moreover, the injunction does not address Dominion's claims of exclusive programming and monetary damages.

The district court did not abuse its discretion in failing to apply the heightened standard for obtaining a preliminary injunction. The issue remains, however, whether the district court erred in granting the preliminary injunction under the traditional standard for preliminary injunctive relief.

2. Preliminary Injunction Analysis

*a.    Irreparable Harm*

EchoStar contends that the district court abused its discretion in finding irreparable harm. A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *See Kikumura*, 242 F.3d at 963. The district court found that denying Dominion injunctive relief would result in Dominion's loss of reputation, good will, marketing potential, and ability to meet its contractual obligations to programmers and lifetime subscribers.

EchoStar asserts that Dominion has offered only generalities and speculation to establish irreparable injury if injunctive relief is denied. In support of this assertion, EchoStar relies on *SCFC ILC, Inc. v. Visa USA, Inc*. In *SCFC*, this court vacated the district court's preliminary injunction ordering the defendant Visa to approve plaintiff MountainWest's unprecedented 1.5 million credit card order. *See id.* at 1098-99. MountainWest argued that denial of injunctive relief would cause irreparable injury because it would lose a "window of opportunity" to launch a new credit card program. *See id.* at 1100.

The facts in this case, however, are distinguishable. At the district court hearing, Dominion CEO Robert Johnson testified that Dominion's *preexisting* business had already suffered from EchoStar's actions. Johnson stated that up to

-16-

500 Dominion subscribers had not been activated because of EchoStar's actions, and that Dominion had already begun to receive cancellations from subscribers as a result. The district court also heard testimony about one of Dominion's programmers expressing concern over how the dispute would affect its launch. Because Dominion's business relies heavily on word-of-mouth business, Johnson testified that EchoStar's refusal to activate new, non-qualifying Dominion subscribers would damage Dominion's reputation, especially after Dominion had told subscribers that their satellite dish would be activated within three days of contacting Dominion after purchase.

EchoStar also claims that any harm Dominion would suffer from the denial of injunctive relief would be strictly monetary and thus not irreparable. This argument relies on EchoStar's assertion that the only damage Dominion would suffer is the lost income from subscribers who did not meet the purchase eligibility requirements and a five dollar monthly access fee EchoStar wants to assess on new, nonqualifying Dominion subscribers. The parties dispute whether the five dollar fee alternative was properly before the district court. Even if the five dollar proposal were before the district court, no remedy could repair the damage to Dominion's reputation and credibility. Accordingly, this court cannot say that the district court abused its discretion in finding irreparable harm to Dominion.

*b.     Balance of Injuries*

At the hearing, the district court concluded that the balance of injuries weighed in favor of Dominion, because EchoStar will suffer only monetary damages from the injunction, which may be self-inflicted; Dominion, however, will suffer irreparable harm. On appeal, EchoStar claims that the district court abused its discretion because it failed to consider EchoStar's contention that it loses three million dollars per month to comply with the injunction and that EchoStar would not be able to recover monetary damages if it prevails at arbitration because Dominion is in a "precarious financial situation." The district court did not address either of these arguments, and it is not apparent whether EchoStar made these arguments below. In any event, EchoStar has presented nothing indicating that the district court abused its discretion in finding that the balance of injuries tips in favor of Dominion.

*c.     Public Interest*

On this point, EchoStar's only argument on appeal is that granting the injunction violates the public policy of upholding lawful contracts and discouraging their breach. EchoStar does not dispute or challenge the district court's reasoning that the injunction protected the interests of Dominion's customers and supported the public policy of favoring arbitration. This court

concludes that the district court's stated reasons were supported by the record, and thus the court did not abuse its discretion.

### d. *Likelihood of Success on the Merits*

If a party seeking the injunction has met its burden on the above three factors, this court has stated that it may meet the showing of likelihood of success on the merits "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999). In addressing this question, the district court judge below stated that "the most perceptive way of viewing and trying to interpret a contract to the extent that I have to here today is to see how the parties have behaved in the past and how they've treated it. And that should be controlling as a matter of the intent of the parties."

Dominion has met the modified burden for showing likelihood of success on the merits, although for reasons different than that stated by the district court. This court may affirm a district court decision "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Whether Dominion can show a likelihood of success on the merits turns on how the December 1996 amendment affects the underlying contract. Dominion argues that the amendment, by stating that "no further payments shall be required to be made by Dominion to the DISH Group for the Channel Use Cash Fee or for the Lease Cash Fee, nor shall Dominion be entitled to any further Offsets," nullified any contractual obligation that Dominion members also be QRSs. EchoStar counters that the amendment relieved Dominion only from paying certain cash fees, but did not alter the requirement that Dominion subscribers obtain QRS status.

In finding that Dominion had met the modified burden for showing likelihood of success on the merits, the district court relied solely on the parties' course of dealings. The non-waiver clause in Article 16.15, however, states that "no course of dealing between the parties[] shall operate as a waiver" of a party's contractual rights. As a consequence, the parties' course of dealings, upon which the district court relied, does not provide a basis for the district court's conclusion that the Dominion complaint raised questions so substantial and serious as to make the matter ripe for litigation.

The record, however, shows that the parties' conflicting interpretations of the contract and the December 1996 amendment present serious questions that warrant greater investigation. At the hearing, the district judge had concluded

that there were "ambiguities" in the contract, and that "[i]t's up to an arbitrator to resolve the ambiguities that are in the contract and to determine on the basis of the contract, including the amendments, who is specifically right in this instance." This court agrees, and concludes that Dominion satisfied the fourth prong of the preliminary injunction test.[5]

**D. Bond Amount**

Rule 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." This court has stated that the trial court has "wide discretion" in setting the amount of the preliminary injunction bond. *See Cont'l Oil*, 338 F.2d at 782.

At the hearing, the district court made no findings on the security amount before setting the bond at $10,000. This court should not and thus will not perform the fact-finding function reserved for the district courts. *See Davis v. United States*, 192 F.3d 951, 961 (10th Cir. 1999). Without factual findings, this court cannot determine whether the district court abused its discretion in setting the bond amount for the preliminary injunction. Accordingly, this matter must be remanded to the district court to make factual findings in setting the bond under Rule 65(c).

---

[5] In doing so, this court expresses no opinion as to whether the status quo represents the prevailing interpretation of the contract. It is up to the arbitrators in this case to decide the matter.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's preliminary injunction in favor of Dominion, but **REMANDS** to the district court for factual findings and further proceedings, if necessary, concerning the amount and form of bond.