NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CORE LABORATORIES LP,**
*Plaintiff-Appellant,*

**v.**

**SPECTRUM TRACER SERVICES, L.L.C.,
STEVE FAUROT AND KELLY BRYSON,**
*Defendants-Appellees.*

---

2013-1263

---

Appeal from the United States District Court for the Western District of Oklahoma in No. 11-CV-1157, Judge Vicki Miles-LaGrange.

---

Decided: August 7, 2013

---

TANYA L. CHANEY, Sutton McAughan Deaver, PLLC, of Houston, Texas, argued for plaintiff-appellant. With her on the brief was MICHAEL O. SUTTON.

JONATHAN S. FRANKLIN, Fulbright & Jaworski, L.L.P. of Washington, DC, argued for defendants-appellees. With him on the brief were SHELIA KADURA, of Austin, Texas; J. CHRISTOPHER DAVIS, PAUL KINGSOLVER and JONATHAN D. CARTLEDGE, Johnson & Jones, P.C., of Tulsa, Oklahoma.

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Core Laboratories LP, with its principal place of business in Houston, Texas, is in the business of providing services to oil well operators, particularly chemical and radioactive tracer services for hydraulic fracturing ("fracking") processes. Defendants Steve Faurot and Kelly Bryson are ex-employees of Core Laboratories. Faurot and Bryson formed the company Spectrum Tracer Services in 2010 to provide tracer services for hydraulic fracturing processes. This appeal is from the district court's denial of a preliminary injunction against the defendants' use of Core's trade secret and proprietary information. The defendants concede that they possess Core information, including software.

Core Laboratories filed this suit in March 2011 in the United States District Court for the Western District of Texas, alleging that when Faurot and Bryson each left their employment at Core "they took with them various confidential and proprietary trade secret information belonging to Core" and that "[t]hey used Core's trade secrets to establish Spectrum, which directly competes with Core." Appellant Br. 3. The complaint contains counts for misappropriation of trade secrets, unfair competition, breach of contract, copyright infringement, and violation of Texas' Theft Liability Act. The initial complaint did not include a count of patent infringement. Federal jurisdiction was established by federal question because the action arises in part under the copyright laws, and by diversity of state citizenship. 28 U.S.C. §§1331, 1332.

At the defendants' request the case was transferred to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. §1404(a). After the transfer, on November 18, 2011 Core filed an amended

complaint adding counts for infringement of two patents directed to Core's method of tracing of underground fracking. Core requested a preliminary injunction against infringement of the patents, asserting likelihood of success on the merits, irreparable harm, the public interest, and that the balance of the equities weighed in favor of an injunction. The district court denied the motion on March 27, 2012, stating that "any harm that Core has suffered or may suffer as a result of defendants' unlawful use of Core's patent protected services can be adequately remedied through an award of monetary damages." Order, 4, Mar. 27, 2012, ECF No. 94.

The district court held a *Markman* hearing in June 2012, and construed the claims of both Core patents, adopting Core's proposed claim constructions. Order, July 3, 2012, ECF No. 111. On September 6, 2012, the defendants requested *inter partes* reexamination of both patents in the Patent and Trademark Office, and then moved the district court to stay the litigation until completion of the reexaminations. The district court granted the motion on February 8, 2013, and stayed all judicial proceedings "until such time as the PTO completes its reexamination proceedings." Order, 5, Feb. 8, 2013, ECF No. 129. The court stated that "to wait for the PTO to resolve the issue of validity of the relevant patents will simplify the issues in question and facilitate the trial of this case." *Id.*

On the same day, February 8, 2013, Core received a communication from a Spectrum employee concerning certain Core information. The employee stated that he had been asked to "recreate" some Core "functionality," and forwarded a copy of a Core electronic file designated "Software Application," which includes software and information about business procedures, customer lists, charges, and other details of Core's tracing services. The employee also contacted Core by telephone. Four days later Core filed an Emergency Motion with the district court, requesting an injunction against Spectrum's "use" of Core's trade secret Software Application and the infor-

mation therein. Core also asked the district court to lift the stay as to the non-patent counts of the complaint, severing the patent counts. On March 13, 2013, the district court denied Core's Emergency Motion, denying the requested preliminary injunction and declining to lift any aspect of the stay.

This appeal is from the denial of the Emergency Motion. For the reasons we shall discuss, we reverse the denial of the preliminary injunction as to Core's trade secret and proprietary information, and remand with instructions to grant the motion forthwith. For the requested severance and lift of the stay as to the non-patent issues, we remand for reconsideration by the district court in light of the grant of the preliminary injunction.

## DISCUSSION

The genesis of Core's Emergency Motion was a communication from an employee of Spectrum via the "Contact Us" link on Core's website, stating:

> I recently have been contracting with Spectrum Tracer Services and was converted as an actual employee in November. Not long ago I was handed some documents that have your company logos and such on them and had them ask me to recreate the same functionality in other documents and programs for them. From what I have been able to learn I believe you have been in a law suit with my company, and I am not very happy with trying to re-create someone else's work. I have provided one of the worksheets I have been provided with and have others I can provide if they would be of any assistance. I am not sure if you gave my company permission or not to use these, but it is my intention to learn what the truth of the matter is.

The employee attached to his message an electronic file containing a copy of Core's Software Application for its hydraulic fracking services, *see* Exhibit 3 (a CD contain-

ing an electronic copy of the Excel file submitted to Core). The submitted file states under "Properties" that it was created by Will Williams, Core's Operations Manager, and released within Core on January 25, 2010. The record describes a subsequent telephone conversation between a Core manager and the Spectrum employee. Four days later Core filed an Emergency Motion for a preliminary injunction to enjoin Spectrum from "using" the Core Software Application. Core filed its motion under seal to protect the identity of the "whistleblower."

The Software Application is described as an interactive Excel file comprised of twenty-five different worksheets for Core's chemical and radioactive tracing services. The Application's worksheets set forth Core's system whereby users input information, which the Application processes to populate other worksheets and forms in the Application. The Application also contains customer lists, price lists and other business information.

Core explained to the district court and on this appeal that the Software Application is used to help determine how best to conduct its chemical and radioactive tracing services for a particular customer, and to generate the necessary technical data and records. Core provided evidence in the district court of the value of this information in conducting its services.

The copy of the Software Application submitted by the whistleblower employee was released within Core "about a month" before defendant Kelly Bryson left Core. Core states that Bryson had access to the Software Application while employed by Core. The record before us states that Spectrum was formed in 2010 by Bryson and Faurot. The defendants do not say how they came into possession of this and the other Core documents mentioned by the whistleblower and admitted to be possessed by Spectrum. The secret and proprietary status of this information is not disputed.

Spectrum identified the whistleblower employee and filed a declaration signed by him that qualifies his statements to Core. For example, in a telephone conversation that was recorded by Core, he stated that the Core Software Application "is one of the things that management handed to me and said here's what you need to do, here's what you need to reproduce," J.A. 1044. However, the whistleblower's declaration states that "Management at Spectrum has never instructed me to copy or reproduce any text, code, formulas, scripts or data obtained from or derived from Core Laboratories. In my conversation with [the Core manager] I merely assumed that management was involved." J.A. 1106. The whistleblower declared that he received the Software Application from Spectrum's "network administrator" who asked him "to review the [Core] Excel spreadsheets to incorporate field work functions into the CRM I was developing." *Id.* He declared that "At no time have I used any text, code, formulas, scripts or data obtained from or derived from Core Laboratories or ProTechnics in my duties as the person responsible for developing Spectrum's CRM or any other computer related functions or programs." J.A. 1105. The defendants do not explain how the Spectrum "network administrator" came into possession of the Core document.

The employee's declaration stated that, "[i]nstead of taking negative action against [him]," Spectrum "authorized" him to inspect all of the computers in the company and search for any files connected with Core Laboratories. J.A. 1106. He declared that he found "files that . . . might have been created on a Core registered computer," files which have "Core Laboratories" listed in the file's properties, and that he found a copy of Core's Software Application on his computers and also on "a portable hard drive." J.A.1106. No filing or argument by the defendants offers any explanation of how they obtained any Core documents, or what was done with any of the information therein.

The district court denied Core's Emergency Motion in its entirety, stating that Core still had not established that it would be irreparably injured. The court explained:

> The Court finds the only new or different evidence presented in support of Core's second motion for preliminary injunction is the alleged method by which defendants are allegedly misappropriating its patents, trade secrets and copyrighted material.

Order, 5–6, March 13, 2013, ECF No. 137. The court stated that "any harm Core has suffered or may suffer as a result of defendant's unlawful use of the proprietary and confidential information can be adequately remedied through an award of monetary damages." *Id.* at 6.

We conclude that the district court clearly erred in its application of the law relating to wrongful possession and use of trade secret and proprietary information, and thus that the court abused its discretion in declining to enjoin such use *pendente lite*.

## A

The parties debate the choice of law that applies in this case. State law applies to misappropriation of trade secrets and proprietary information. A federal court sitting in diversity applies the procedural law of the forum, and upon transfer of venue pursuant to 28 U.S.C. §1404(a) the substantive law of the transferor state continues to apply, for a **t**ransfer for convenience of the defendant does not change the law governing the plaintiff's state law claims. *Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964) ("The transferee district court must under § 1404(a) apply the laws of the State of the transferor district court"); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts are to apply state substantive law and federal procedural law"); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (federal courts sitting in diversity cases, when deciding questions of substantive law, are bound by state court decisions as well as state statutes).

Because this case was originally brought in Texas, Texas state law governs the trade secret misappropriation and proprietary information count. "*Erie* guarantees a litigant that if he takes his state law cause of action to federal court, and abides by the rules of that court, the result in his case will be the same as if he had brought it in state court." *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696, 706 (5th Cir. 1990).

The grant or denial of a preliminary injunction is reviewed on the standard of abuse of discretion. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "A district court abuses its discretion if it commits an error of law, or is clearly erroneous in its preliminary factual findings." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1153 (10th Cir. 2001). The criteria for grant of a preliminary injunction do not vary significantly among the forums; the moving party must show (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the opponent; and (4) the injunction would not be adverse to the public interest. *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008); *Dominion Video Satellite, Inc.*, 269 F.3d at 1154.

The relevant facts are reviewed under the applicable state law. "While federal law governs the procedural questions when a preliminary injunction may issue and what standards of review we apply, because the district court heard this case only by virtue of its diversity jurisdiction, . . . we analyze the substantive legal questions associated with their dispute under, and in light of, that state's law." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). *Accord Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) (applying Louisiana substantive law of the forum state and 5th Circuit procedural law); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 774 n.2 (N.D. Tex. 2012) ("A federal court sitting in diversity applies the federal

standard for determining whether a preliminary injunction should be granted. . . . [H]owever, the court will apply Texas law . . . in deciding the substantive issue of whether the covenant at issue is enforceable."). The applicable state law is that of the transferor state, Texas.

## B

The district court found that Core did not establish irreparable injury. We think that the district court's finding is clearly erroneous, whether assessing irreparable injury is a matter of Texas law or federal law.

Under Texas law, "[w]hen a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App. 2005). The factual situation herein satisfies this presumption of harm and, in any event, convincingly shows irreparable harm for a preliminary injunction. As the Court explained in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), for trade secrets "[t]he economic value of that property right lies in the competitive advantage over others that [the trade secret holder] enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge." *Id.* at 1012. Core provided generally undisputed evidence that its competitive position has been significantly eroded, both as to loss of customers to Spectrum, and as to price erosion.

Texas precedent is that the threatened disclosure or use of the trade secrets of another constitutes irreparable injury as a matter of law. *IAC, Ltd.*, 160 S.W.3d at 200 ("The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law."); *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex. App. 1986) (holding that "where the uncontradicted evidence shows that a former employee is working for a direct competitor, no finding of irreparable injury is necessary to support a permanent injunction to protect trade secrets" because

irreparable injury is established as a matter of law). Moreover, the record here convinces us that it was clear error to find no irreparable injury on the new facts presented to the district court by Core upon hearing from the whistleblower; facts quite different from the facts relevant to the earlier patent infringement motion.

Core points out that its fortuitous knowledge that Spectrum is in possession of Core's Software Application, including all twenty-five worksheets, was a dramatic change in the litigation landscape. In the district court, the defendants conceded possession of the Software Application, and the defendants' Opposition to Core's injunction motion included the admission that Spectrum computers contain additional "files that . . . might have been created on a Core registered computer" and which have "Core Laboratories" listed in the file's "Properties." J.A. 1106. The declaration of the whistleblower as provided by the defendants admits that Spectrum's "network administrator" gave him a copy of Core's Software Application and asked him "to review the Excel spreadsheets to incorporate field work functions into the CRM I was developing." *Id.*

Core provided evidence that Spectrum's use of Core's proprietary information had already injured its business, and that Core has lost nearly $1 million worth of jobs to Spectrum. Core describes its extensive efforts over several years in development of the Software Application technology to reliably implement Core's chemical and radioactive tracing services for use in underground fracking, whereas Spectrum has avoided development costs by copying Core's methodology and software, thus gaining a market advantage. Core states that an injunction would require the defendants to "fend for themselves in the marketplace without the benefit of the trade secrets they stole from Core." Appellant Br. 46. Texas courts have held that competitive injury derived from misappropriated proprietary information warrants injunctive relief. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,*

965 S.W.2d 18, 24 (Tex. App. 1998) ("Injunctive relief is proper to prevent a party, which has appropriated another's trade secrets, from gaining an unfair market advantage.").

Core also presented evidence that its clients have been and are being successfully recruited by Spectrum. Texas law holds that "[a]n injunction is appropriate when necessary to prohibit an employee from using confidential information to solicit his former employer's clients." *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App. 1993). Core argues that injunctive relief is necessary because damages adequate to compensate for Spectrum's use of Core's information would be difficult to calculate. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App. 1995) (a legal remedy is inadequate if damages are difficult to calculate or their award may come too late). That argument is convincing for the kind of information at issue here, even if it was not convincing for the patent infringement at issue earlier.

C

The undisputed facts well support the likelihood that Core will succeed at trial in showing that "(1) a trade secret exists; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007) (applying Texas law).

Core showed that information in the Software Application meets the Texas definition of a trade secret as "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. App. 1996). Spectrum does not deny its possession of the Software Application. Instead, Spectrum argues that Core did not prove that Spectrum has used or intends to use Core information,

and points to the whistleblower's declaration on behalf of Spectrum: "At no time have I used any text, code, formulas, scripts or data obtained from or derived from Core Laboratories or ProTechnics in my duties as the person responsible for developing Spectrum's CRM or any other computer related functions or programs." J.A.1105. Core responds that the whistleblower's declaration also states that the "network administrator" instructed him "to review" and "to incorporate" features of this Software Application into Spectrum's software. J.A. 1106.

Use of a misappropriated trade secret does not require complete copying or implementation of every detail. "[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' . . . [including] marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret." *Gen. Universal Sys.*, 500 F.3d at 451 (applying Texas law). Texas law weighs heavily on Core's side.

As for the public interest, Spectrum states that the public interest is not implicated, and Core stresses the public interest in commercial integrity and protection of legal and property rights. "Injunctive relief is recognized as a proper remedy to protect confidential information and trade secrets." *Rugen*, 864 S.W.2d at 551.

Core showed that its information likely meets the definition of trade secret, that it is likely to prevail on the merits for trade secret misappropriation, and that the balance of harms and the public interest are in its favor. Spectrum's possession of Core's trade secret information is presumptively improper and its adverse use during the potentially prolonged PTO reexamination and appeal periods is not likely to be fully remediable by monetary damages. We conclude that the district court abused its

discretion in denying Core's motion for a preliminary injunction.

We reverse the denial of the preliminary injunction. The case is remanded to the district court with instructions to enjoin the defendants from using Core's trade secret Software Application and proprietary information during the litigation of these issues. The court should define the scope of the injunction consistent with this opinion. *See Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1077 (10th Cir. 2001) (reversing denial of preliminary injunction and remanding with instructions to enter the injunction).

## D

The district court stayed all judicial action pending completion of the patent reexamination proceedings that Spectrum had initiated. Core requested severance of the patent counts, and that the district court proceed with the non-patent counts. The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In view of our ruling with respect to entry of the preliminary injunction, the circumstances are sufficiently changed that review of the severance and stay may be warranted. On remand the district court may reconsider, in its discretion, whether to continue the stay in whole or in part.

## SUMMARY

The denial of Core's motion for a preliminary injunction is reversed; we remand for implementation of the injunction, and discretionary review of the stay order.

## REVERSED AND REMANDED