■ ALEXANDER & ALEXANDER OF NEW YORK, INC., et al., Respondents, v HARRY W. FRITZEN, JR., et al., Defendants, and JAMES W. BARBER, Appellant.—Order, Supreme Court, New York County (Clifford A. Scott, J.), entered February 4, 1985, which denied appellant Barber's motion for summary judgment dismissing Alexander's complaint as to him and granted Alexander's cross motion to consolidate the action with another action in said court brought by Albert G. Ruben & Co., Inc. (New York), unanimously reversed, on the law and in the exercise of discretion, without costs or disbursements, to grant summary judgment dismissing Alexander's complaint as against appellant and grant consolidation to the extent of directing a joint trial of the two actions.

Albert G. Ruben & Co., Inc. (New York) (AGR), commenced an action (action No. 1) against appellant, three former employees and two corporations, alleging a conspiracy to divert business from AGR through unfair competition, misrepresentations and breach of duty. On a prior appeal in that action, we affirmed an order which had denied appellant's motion to dismiss, without prejudice to renewal after discovery proceedings had been completed. *(Ruben & Co. v Fritzen,* 101 AD2d 795.)

During the pendency of the appeal in action No. 1, another action (action No. 2) was commenced by respondent Alexander & Alexander of New York, Inc. (A & A) in a complaint setting forth essentially the same causes of action as presented in action No. 1 by AGR. A & A alleges that appellant had been employed by it in the early 1970's, until November 1, 1976, when Barber began working for AGR as head of its New York office. In that capacity, he supervised defendants Fritzen and Bikoff and hired defendant Pierro, all employees of AGR, an insurance brokerage firm which specialized in insurance for the entertainment industry.

On June 30, 1978, Barber resigned from AGR and became risk manager for Warner Communications, Inc. (Warner), responsible for the placement of Warner's insurance through various brokers and agents. Warner had previously been a major account of AGR. A & A alleges that Fritzen, Bikoff and

Pierro, who had an interest in the corporate defendants, conspired with appellant, initially when all were employed by AGR, in such a manner that the Warner account and business were diverted to other brokerage firms, resulting in a loss to both AGR (which is not a party in action No. 2) and A & A. Relying on a claim of disloyalty to A & A by reason of Fritzen's, Bikoff's and Pierro's status as salaried employees of AGR, A & A claims that it has been substantially damaged by the diversion of business to the corporate defendants.

A & A's complaint charges the defendants with conspiracy, unfair competition and tortious and malicious interference with its business relationships. As against appellant, only four causes of action are alleged. The first charges a conspiracy to divert specific contracts; the fifth cause of action is for tortious interference with A & A's employment relationship with Fritzen and Bikoff; the sixth cause for prima facie tort; and, the seventh for injurious falsehood.

It clearly appears that, as against appellant, A & A has no standing on either its first or fifth causes of action. The complaint alleges that A & A is the parent corporation of the California based Albert G. Ruben & Co., Inc., which, in turn, is the corporate parent of AGR. As a result, AGR is a second tier subsidiary of A & A. In papers submitted at Special Term and on this appeal, plaintiff contends that the complaint misdescribed the relationship between the corporations and that, in fact, A & A and AGR are both subsidiaries of the parent corporation, Alexander & Alexander, Inc. In either case, since, apparently, both A & A and AGR are separate and distinct entities, with neither exercising complete dominion and control over the other, there is no basis upon which A & A may interpose a claim for tortious interference with the employment relationships between AGR and its employees, Fritzen, Bikoff and Pierro. (Cf. Gulf & W. Corp. v New York Times Co., 81 AD2d 772, 773; Musman v Modern Deb, 50 AD2d 761, 762.) These and other cases recognize that, in terms of legal responsibility, parent, subsidiary or affiliated corporations are treated separately and independently and one will not be held liable for the contractual obligations of the other, unless it is shown that there was an exercise of complete dominion and control. There was no such showing here. Similarly, one corporation will generally not have legal standing to exercise the rights of other associated corporations. As applied here, to the extent the pleadings disclose any allegation of wrongful conduct, it was clearly directed at AGR, not A & A.

The first cause of action is premised upon an alleged conspiracy among the defendants which diverted business from AGR and A & A. The same considerations which render invalid the fifth cause apply with respect to the first cause of action. As noted, no employment relationship existed between A & A and any of the defendants during the specific period alleged in the complaint. In addition, whether A & A appears as a parent or affiliate corporation, in terms of its relationship to AGR, is irrelevant in the absence of any allegation of complete dominion and control. But, even assuming the existence of a conspiracy, in the absence of a claim of any profit received, financial advantage or benefit to Barber, who is not alleged to have had any interest in the defendant corporations, no cause of action is stated under *Jones Co. v Burke* (306 NY 172, 194-195), which we find dispositive here. *(See also, Serwer Adv. v Salit,* 17 AD2d 918.) The record is clear that, at the time of these events, Barber was solely an employee of Warner, to whom he owed a duty of loyalty, not A & A. In any event, inasmuch as there is no claim that he derived any benefit or advantage as a result of the alleged conspiracy, no cognizable claim for relief is stated. *(Jones Co. v Burke, supra.)*

The sixth and seventh causes for, respectively, prima facie tort and injurious falsehood are similarly deficient. The Court of Appeals recently reiterated the elements of a cause of action for prima facie tort as the intentional infliction of harm, which results in special damages, without any excuse or justification, by an act or series of acts which would otherwise be lawful. *(Freihofer v Hearst Corp.,* 65 NY2d 135, 142-143.) In addition, to properly plead a claim for prima facie tort, it is necessary to allege that the action complained of was solely motivated by malice or " 'disinterested malevolence' " *(Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 333; *see also, Curiano v Suozzi,* 63 NY2d 113, 117). Here, it clearly appears that, at the time of the complained-of conduct, Barber was an employee of Warner and, in deciding as to the placement of insurance, was not motivated solely by malice toward the plaintiff. Further, as stated, a critical element of the cause of action for prima facie tort is that the plaintiff suffered specific, measurable loss, requiring an allegation of special damages. *(Freihofer v Hearst Corp., supra,* p 143; *Curiano v Suozzi, supra,* p 117; *ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 458; *Morrison v National Broadcasting Co.,* 19 NY2d 453, 458; *Susskind v Ipco Hosp. Supply Corp.,* 49 AD2d 915.) Here, no special damages have been alleged.

The allegations of the seventh cause of action for injurious

falsehood are equally insufficient. There is no allegation as to the particular falsehood uttered by appellant, necessary to state a cause of action *(Al Raschid v News Syndicate Co.,* 265 NY 1, 4-5; *cf. Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co.,* 7 AD2d 441, 444) nor have special damages been alleged, as is required *(Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co., supra,* p 445; *cf. Clark v New York Tel. Co.,* 52 AD2d 1030).

As to consolidation, bearing in mind the underlying differences between an organic consolidation and a joint trial *(see generally, Vidal v Sheffield Farms Co,* 208 Misc 438; Siegel, NY Prac p 156), the interests of justice, conservation of time and the convenience of the court, the parties and material witnesses will be best served by a joint trial. Concur—Murphy, P. J., Sullivan, Ross, Kassal and Ellerin, JJ.