MICHAEL MANDELBLATT, Respondent, v DEVON STORES, INC., et al., Appellants.

MICHAEL MANDELBLATT, Plaintiff, v REVLON GROUP, INC., Defendant.

First Department, December 8, 1987

## APPEARANCES OF COUNSEL

*Daniel Rhoades* of counsel *(Rhoades & Rhoades, P. C.,* attorneys), for respondent.

*John P. Furfaro* of counsel *(Henry P. Baer* and *Maury B. Josephson* with him on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for appellants.

## OPINION OF THE COURT

ROSENBERGER, J.

Plaintiff-respondent, Michael Mandelblatt, served as the chief financial officer of Pantry Pride, Inc., which, in 1984, acquired defendant-appellant Devon Stores, Inc., a retail chain that sells consumer goods to military personnel. Respondent then became president and chief executive officer of Devon. In June 1985 Pantry Pride was acquired by the MacAndrews & Forbes Group, Inc., and, at that time, respondent was asked to resign his posts with Pantry Pride and Devon. He was retained, however, as a consultant to Pantry Pride (which subsequently changed its name to Revlon Group Incorporated) pursuant to a contract entered into on July 26, 1985.

Under the terms of that agreement, respondent was to provide consulting services "in connection with the management, operation and disposition" of Devon Stores, which its parent company was attempting to sell. Respondent was to receive a base fee of $250,000, payable in monthly installments during the term of the contract from August 1, 1985 to June 11, 1986.

Respondent was also to be paid additional compensation as follows: if there was no disposition of Devon on or before June 11, 1986, he would receive $543,000; however, in the event Devon was liquidated, merged, or its stock or assets sold, either to an affiliate of Pantry Pride or to a third party, or if respondent was discharged other than for cause, all on or before June 11, 1986, he would receive $693,000; and in the event that a third party acquired Devon on or before June 11, 1986, he would also receive 1.25% of the proceeds in excess of $35,000,000 up to a maximum of $250,000. However, in the event respondent was terminated for cause, he was to receive his base fee to the date of discharge plus an additional fee of $700,000.

Paragraph 7 of the agreement provides that respondent "may be discharged as a consultant to the Company without any breach of this Agreement": upon expiration of the contract; upon respondent's death; in the event of respondent's incapacity due to illness; or for "cause". The agreement defined "cause" as: "the willful and continued failure by Mandelblatt to substantially provide the services" called for under the contract after a demand for performance had been delivered by the directors of the company; or, "the willful engaging by Mandelblatt, in his capacity as a consultant, in gross

misconduct materially injurious to Pantry Pride monetarily or otherwise"; or, respondent's conviction of a felony under Federal or State law.

Respondent was discharged for cause by appellant Revlon's board of directors on May 20, 1986. The notice of termination cited respondent's "threats to fail to perform" his duties unless he received "a new and more lucrative contract" and respondent's "lack of cooperation with and discouragement of prospective purchasers of Devon Stores, Inc." after his demand for a new contract had been rejected by appellants. The board deemed respondent's misconduct willful and materially injurious to the corporation. Thereafter, appellant tendered $714,785 to respondent, as required by the contract, conditioned upon his return of the company car and the execution of a release absolving appellant of all liability under the contract.

Respondent rejected the payment tendered, refused to execute the release, and retained the automobile which was then valued at $25,000. He instituted this action for breach of contract, alleging that appellants had, without his consent, attempted to change the scope of the services he was to provide under the agreement and that he had been wrongfully discharged. The complaint demanded compensatory and punitive damages in excess of $11,000,000. Appellants answered and asserted one counterclaim for conversion of the automobile. Later they moved to amend the answer to state three additional counterclaims for breach of contract, breach of fiduciary duty, and intentional interference with prospective economic advantage and prima facie tort.

In support of the motion to amend, appellants submitted the affidavit of Bruce Slovin, president of MacAndrews & Forbes Group, Inc., who had discussed with respondent his demand for a three-year agreement with increased salary and bonuses. At one time, Slovin alleged, respondent requested 10% of the proceeds in excess of $35,000,000 if Devon were sold. On various occasions, respondent allegedly expressed dissatisfaction with his position and disparaged Devon as an inferior company. Appellants rejected his demand for a long-term contract because it would have been inconsistent with their desire to sell Devon as quickly as possible. They did, however, offer respondent an extension of his contract through the end of 1986. This was unacceptable to respondent who allegedly told Slovin that he had no enthusiasm for managing Devon and would not actively assist appellants' efforts to sell it.

A few days after this conversation, Slovin learned from the broker who had referred three prospective purchasers for Devon that respondent had disparaged Devon's business and financial condition in meetings with the prospective buyers. They then canceled or postponed trips scheduled to inspect Devon's assets and operations. These acts by respondent were the basis for appellants' added counterclaims in the amended answer.

Respondent opposed the motion to amend and moved for partial summary judgment on his claim for compensation equal to the termination fee previously tendered by appellants, less the value of the automobile which he had kept. The court below granted respondent partial summary judgment, finding that even if respondent was properly discharged for cause, he was nevertheless entitled to the $700,000 payment under the terms of the agreement. Appellants' motion for leave to amend their answer was denied.

The court rejected the counterclaim for breach of contract on the ground that it would be "wholly inconsistent" to allow appellants "a recovery for breach of contract on the same transaction which they intended to accept as a basis for compensated severance." Finding the language of paragraph 7 unambiguous, the court determined "from the terms of the Agreement between the parties that these acts would fall within the definition of 'cause' for which plaintiff could be discharged with severance as provided." Appellants' counterclaim for tortious interference was rejected because there was no allegation that respondent had used improper or wrongful means, and the counterclaim for prima facie tort was also found deficient because it failed to allege that respondent's acts were without excuse or justification. The court did not state what deficiency it found in the counterclaim for breach of fiduciary duty.

■ We reverse the order denying appellants leave to amend their answer and awarding respondent partial summary judgment. We cannot agree that the intention of the parties with respect to the termination provision was so clearly and unambiguously expressed in the agreement that it could be determined as a matter of law. The provision in paragraph 7 that "Mandelblatt may be discharged as a consultant to the company without any breach of this agreement" leaves open the question: "without any breach of the agreement" by whom— Mandelblatt or the company? This uncertain wording raises a question as to what the parties to the contract intended.

Given the ambiguity in this language, the court below erred in determining, as a matter of law, the intention of the parties therefrom.

The construction given paragraph 7 by the court, moreover, produces an unreasonable result which would, in effect, place one party to the contract at the mercy of the other. This is "against the general policy of the law" *(Fair Pavilions v First Natl. City Bank,* 19 NY2d 512, 518 [1967]; *Spear v Plaza Sound Studios,* 59 AD2d 778 [2d Dept 1977]). Willful and gross misconduct which causes material harm to the cocontracting party, or the willful failure to perform the services called for under a personal services agreement, are acts which normally constitute breach of contract for which the defaulting party must answer in damages and, if "morally culpable," punitive damages *(Hubbell v Trans World Life Ins. Co.,* 50 NY2d 899, 901 [1980]). The court below, however, construed paragraph 7 as effecting a waiver of appellants' right to sue respondent for any damages which his conduct might cause.

It does not necessarily follow that the inclusion of a broad definition of "cause" was intended to relieve respondent of liability for damages resulting from conduct which falls within the definition. If the motion court's interpretation were correct, respondent would be free to cause willful injury to appellant and, in so doing, be sure of receiving more substantial severance compensation than the compensation he would have earned had he failed to effect a sale of Devon despite his best efforts. Such a construction appears unreasonable and would produce an inequitable result which should not be presumed by the court to have been what the parties intended.* *(Fleischman v Fergueson,* 223 NY 235, 241 [1918] ["A court will endeavor to give the construction most equitable to both parties instead of the construction which will give one of them an unfair and unreasonable advantage over the other"]; *Nassau Ch., Civ. Serv. Employees Assn. v County of Nassau,* 77 AD2d 563, 564 [2d Dept 1980], *affd* 54 NY2d 925 [1981].)

■ We also find that it was error for the court to dismiss appellants' counterclaims for breach of fiduciary duty and intentional interference with prospective economic advantage. It is well settled that the same conduct which may constitute

---

* We do not consider, since neither side raised, the obvious public policy implication of the enforceability of a provision such as this one, which would award a party a very substantial sum based solely on his own misconduct, including, *inter alia,* conviction of a felony.

the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself. *(Meyers v Waverly Fabrics,* 65 NY2d 75, 80, n 2 [1985]; *North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, 179 [1968]; *Albemarle Theatre v Bayberry Realty Corp.,* 27 AD2d 172, 175 [1st Dept 1967].)* We find that appellants stated a valid counterclaim for breach of fiduciary duty against respondent. "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." (Restatement [Second] of Torts § 874, comment a.) The charge that respondent disparaged Devon and injured appellants' business opportunity when he was under a duty, as a highly paid consultant, to give advice and act for appellants' benefit, is sufficient to state a claim for this tort.

■ The counterclaim for intentional interference with prospective economic advantage was also adequately pleaded. Intentional interference with a precontractual business relationship is actionable if effected by unlawful means or, under the theory of prima facie tort, by lawful means without justification *(Sommer v Kaufman,* 59 AD2d 843 [1st Dept 1977]). Prima facie tort is the intentional infliction of harm which results in special damages, without excuse and solely motivated by malice *(Freihofer v Hearst Corp.,* 65 NY2d 135, 142-143 [1985]; *Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 333, *affg* 88 AD2d 50, 71-72 [2d Dept 1982]).

While it is true that a party must allege special damages to plead an independent cause of action for prima facie tort successfully *(Alexander & Alexander v Fritzen,* 114 AD2d 814, 815 [1st Dept 1985], *affd* 68 NY2d 968 [1986]), no allegation of special damages is required to make out a claim for intentional interference with precontractual relations or prospective economic advantage for, in such a case, the measure of damages "is the loss suffered by the plaintiff, including the opportunities for profits on business diverted from it" (32 NY Jur, Interference, § 40, cited in *Sommer v Kaufman, supra,* at 844). Consequently, allegations of special damages are not required to plead a valid cause of action for intentional interference through means which constitute a prima facie tort. However, the acts of interference, although lawful, must be prompted solely by malice or ill will and exceed the bounds of legitimate, robust competition. Here, however, respondent

was appellants' consultant, not a competitor. As such, he was bound by a duty of fidelity to his principal *(Feiger v Iral Jewelry,* 41 NY2d 928 [1977]; *see also,* Restatement [Second] of Agency § 469; Restatement [Second] of Torts § 767 [g].)

[3, 4] The counterclaim alleges that the purpose of Mandelblatt's conduct was "solely to prevent a sale of Devon unless and until his demands for an enhanced consulting agreement were met", which would indicate that respondent was motivated not solely by malice but by the prospect of greater gain, as the court below noted. However, the Slovin affidavit alleges that respondent disparaged Devon's business and financial condition *after* his demand for a longer and more lucrative contract had been rejected. It therefore appears that this was a retaliatory action, prompted by malice and intended solely to damage appellants with whom respondent had a confidential, fiduciary relationship. Such conduct is actionable *(A. S. Rampell, Inc. v Hyster Co.,* 3 NY2d 369, 376 [1957] ["Absent the relation of confidence between the parties, the complaint would not state facts sufficient" to state a cause of action for interference with an at-will relationship]). Where the supporting affidavit contains facts sufficient to establish a valid claim, the defect in the pleading itself should be disregarded (CPLR 3026).

Finally, to maintain an action for intentional interference with prospective economic advantage there "must be some certainty that the plaintiff would have gotten the contract but for" the defendant's interference *(Union Car Adv. Co. v Collier,* 263 NY 386, 401 [1934]; *Williams & Co. v Tuttle & Co.,* 6 AD2d 302, 306-308 [1st Dept 1958], *lv denied* 5 NY2d 710 [1959]). In their counterclaim appellants state that the prospective buyers "would likely have purchased Devon but for [respondent's] conduct" and the allegations in the Slovin affidavit are sufficient, at this stage, to sustain the pleading. "The day never existed in our jurisprudence when the courts required plaintiff not only to state a cause of action but also establish in the pleading that he could prove it." *(Williams & Co. v Tuttle & Co., supra,* at 308.) Inasmuch as appellants should have been granted leave to assert these additional counterclaims, for which compensatory and punitive damages in excess of $25,000,000 are demanded, the court erred in granting partial summary judgment to respondent *(Chisholm Ryder Co. v Munro Games,* 58 AD2d 972 [4th Dept 1977]; *Koondel v Creative Capital Fund,* 36 AD2d 587 [1st Dept 1971]).

Accordingly, the order of the Supreme Court, New York County (William McCooe, J.), entered May 28, 1987, which denied defendants-appellants' motion for leave to amend their answer and which granted plaintiff-respondent's motion for partial summary judgment; and the judgment of said court entered June 4, 1987, awarding partial summary judgment to respondent in the amount of $745,459.16 should be reversed, on the law, to grant appellants leave to amend their answer to assert counterclaims for breach of contract, breach of fiduciary duty, and intentional interference with prospective economic advantage, and to deny the motion for partial summary judgment, and the aforesaid judgment vacated, without costs.

KUPFERMAN, J. P. (dissenting in part). While I concur to the effect that the motion for leave to amend the answer to assert counterclaims should have been granted, I see no reason to deny partial summary judgment to the plaintiff.

Paragraph 8 (b) of the agreement of July 26, 1985 between Pantry Pride, Inc., and the plaintiff provided for the payment in the event of "Discharge for Cause". While perhaps we might stay entry of the judgment (see, e.g., Stigwood Org. v Devon Co., 44 NY2d 922; Dalminter, Inc. v Dalmine, S.p.A., 29 AD2d 852, 853, affd 23 NY2d 653), that does not mean we should deny the plaintiff's motion.

SULLIVAN, CARRO and MILONAS, JJ., concur with ROSENBERGER, J.; KUPFERMAN, J. P., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on May 28, 1987, and judgment of said court, entered on June 4, 1987, reversed, on the law, to grant appellants leave to amend their answer to assert counterclaims for breach of contract, breach of fiduciary duty and intentional interference with prospective economic advantage, and to deny the motion for partial summary judgment, and the aforesaid judgment vacated, without costs and without disbursements.