**SHRED–IT USA, INC. and Shred–It Canada, Inc., Plaintiffs,**

v.

**MOBILE DATA SHRED, INC., Michael Bohbot, Nitza I. Cruz, and Executive Mobile Shredding, Defendants.**

No. 01 CV 1967(VM).

United States District Court, S.D. New York.

May 20, 2002.

Gabrielle Lisa Gould, Kramer, Levin, Robert N. Holtzman, Naftalis & Frankel, New York City, for Plaintiff.

Michael Gross, Hackensack, NJ, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

On March 18, 2002, plaintiffs Shred–It USA, Inc. and Shred–It Canada, Inc. ("Shred–It"), filed a motion for a temporary restraining order and a preliminary injunction, pursuant to Federal Rule of

Civil Procedure 65, against all defendants in this action, enjoining them, among other things, from engaging in the mobile shredding business in the United States or Canada. In an Order dated March 19, 2002, the Court issued the temporary restraining requested by Shred–It. On March 22, 2002, the Court held a hearing on this matter with the appearance of counsel for all parties. During the hearing, defendants Michael Bohbot (hereinafter "Bohbot") and Mobile Data Shred, Inc. (hereinafter "MDS") consented to the continuation of the temporary restraining order as to them, subject to the terms of a proposed Order, to be agreed upon by the parties and submitted for the Court's approval. Having concluded that Shred–It had not satisfied the applicable standards to sustain a continuation of the temporary restraining order as against defendants Nitza I. Cruz (hereinafter "Cruz") and Executive Mobile Shredding (hereinafter "EMS"), the Court issued an Order on March 26, 2002, vacating the temporary restraining order as against those defendants. On April 19, 2002, the Court held another hearing on Shred–It's motion for a preliminary injunction against Cruz and EMS. At the hearing, counsel for Shred–It, Bohbot and MDS informed the Court that they had not been able to agree upon a proposed preliminary injunction, as they had agreed to do at the March 26, 2002 Hearing.

On April 18, 2002, Bohbot and MDS moved to dismiss Shred–It's complaint, alleging that it failed to state a claim upon which relief may be granted and that it failed to plead the circumstances of the alleged fraud with particularity. For the reasons set forth below, Shred–It's motion for a preliminary injunction with respect to Bohbot and MDS is granted and Shred–It's motion for a preliminary injunction with respect to Cruz and EMS is denied. In addition, the motion to dismiss submit-

ted by Bohbot and MDS is granted in part and denied in part.

## I. SHRED–IT'S MOTION FOR A PRELIMINARY INJUNCTION

### A. FACTUAL BACKGROUND

The following facts were adduced in the two hearings that the Court held on March 26 and April 19, 2002, as well as from the documentary exhibits submitted by the parties. Shred–It owns and operates document destruction businesses in a number of cities in the United States and Canada. Bohbot was and is still is the principal owner of MDS, which operated a document destruction business before the instant dispute arose. Before January, 2002, Cruz had been the Vice–President of operations and sales at MDS. Her responsibilities included soliciting customers and negotiating prices with them. (See April 19, 2002 Hearing Tr. (hereinafter "Hearing Tr."), at 31.) In an agreement dated November 20, 2001 (hereinafter the "Agreement"), Shred–It agreed to pay MDS a net sum of $1,325,002 in exchange for the majority of MDS's assets, including its office, equipment, trucks, outstanding business contracts and the "goodwill" of MDS's mobile shredding business in the state of New York. In connection with the sale of its "goodwill," MDS and Bohbot entered into a covenant (hereinafter the "MDS Covenant") in which they agreed, for five years, not to

directly or indirectly, either individually or in partnership or in conjunction with any person or persons as principal, agent, shareholder or in any manner whatsoever:

(i) Carry on or be engaged in or concerned with or interested in or advise, lend money to guarantee the debts or obligations of or permit [its] name or any part thereof to be used or em-

ployed by any person or persons engaged in any shredding services similar to the business then being carried on by [Shred–It] and its affiliates and subsidiaries in North America;

(ii) Solicit, interfere with or endeavor to entice away from, any person or persons having dealings with [Shred–It] or its affiliates or subsidiaries or any customer of [Shred–It] or its affiliates or subsidiaries . . . .

(*See* Schedule F of Asset Purchase Agreement, dated November 20, 2001, attached as Ex. A to Affidavit of Joseph David in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, dated March 15, 2002 (hereinafter "David Aff.").)[1] In addition, Bohbot personally signed a similar covenant on January 7, 2002 (hereinafter the "Bohbot Covenant"), in which he promised, among other things, not to: (1) engage in or advise any business similar to the business of Shred–It in the European Union; (2) solicit, interfere with or endeavor to entice away any person or persons having dealings with Shred–It; or (3) divulge to any person or persons information relating to the private, financial and business affairs of Shred–It, *See* David Aff., Ex. A at 47–48. In exchange, Shred–It promised to

pay Bohbot $1.2 million personally, payable in five equal annual installments over five years. (*Id.*)

At the April 19, 2002 Hearing, Cruz testified that she learned of Shred–It's acquisition of MDS approximately one week before it became effective in a meeting with Bohbot in his office. (Hearing Tr. at 49.) Upon learning of the acquisition, Cruz walked out of his office and when he later called on the phone she told Bohbot, "I didn't know what I was going to do at this point." (*Id.*) Bohbot later promised to provide Cruz with a severance package, although he did not specify the amount. Shortly thereafter, Cruz left the employment of MDS and some time in February, 2002 she began operating EMS as a shredding business.[2] At the April 19, 2002 Hearing, Cruz testified that when she left MDS she took her Rolodex that contained information related to the customers of MDS. (*Id.* at 33.) In addition, she sent MDS's former customers letters informing them that she no longer worked for MDS.

After Cruz left MDS, she made several requests to Bohbot to provide the severance package that he had indicated that he would give her. Bohbot ultimately made four payments to Cruz in February, 2002,

---

1. Although the MDS Covenant is signed by Michael Bohbot, the copy provided to the Court is undated. However, neither Bohbot nor MDS contest the validity of the MDS Covenant.

2. According to Cruz, MDS paid nearly all of Cruz's salary to EMS in 2001, totaling approximately $58,000. (Hearing Tr. at 27.) At some point during this time, while Cruz was still an employee of MDS, she worked at MDS's office part-time and worked from home part-time. (Hearing Tr. at 48.) When Cruz received calls from shredding customers while she was at home, Cruz would call either "Mobile Shredding Services or have Mobile Data Shred do the shredding." (*Id.*) According to Cruz's federal tax returns, EMS spent $3,900 on repairs and maintenance, $2,300

on supplies and $4,166 on utilities during 2001. (*See* Schedule C of 2001 Individual Income Tax Return, Form 1040, signed by Nitza Cruz, introduced during the April 19, 2002 Hearing.) At the April 19, 2002 Hearing, Cruz testified that EMS did not begin to directly engage in shredding services until the last week of January or the first week of February in 2002. (*Id.* at 32.) However, in light of the activities of EMS in 2001 and the fact that Bohbot signed the Agreement with Shred–It on November 20, 2001, there are substantial questions as to whether Bohbot informed Cruz about his intention to sell MDS's shredding business in 2001, prompting her to start working for MDS as "EMS" as opposed to "Nitza Cruz."

totaling approximately $203,000. At Cruz's request, Bohbot wire transferred the largest of these payments, for an amount of $183,000, to a company called Shred Fast. (Hearing Tr. at 50.) Cruz used this money to purchase a shredding truck for EMS.

Shred–It alleges that after the MDS Covenant and Bohbot Covenant became effective on January 7, 2002, Bohbot and MDS violated the MDS and Bohbot Covenants by: (1) engaging in shredding services themselves and in collaboration with Cruz and EMS; and (2) "systematically soliciting and servicing the very customers and usurping the goodwill that Shred–It purchased under the Agreement." (*See* Plaintiffs' Memorandum of Law in Support of Its Motion for a Temporary Restraining Order and Preliminary Injunction, dated March 18, 2002 (hereinafter "Pls.' Mot."), at 2.)

## B. *DISCUSSION*

█ ˙ It is well settled that a party seeking injunctive relief must establish two elements: (1) irreparable harm to the movant, and (2) either (a) a likelihood of success on the merits of the underlying claim or (b) sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and a balance of the hardships tipping decidedly toward the movant. *Natsource LLC v. Paribello*, 151 F.Supp.2d 465, 468–69 (S.D.N.Y.2001) (citing *Sweeney v. Bane*, 996 F.2d 1384, 1387 (2d Cir.1993) and *Inverness v. Whitehall*, 819 F.2d 48, 50 (2d Cir.1987)). These elements must be established by a preponderance of the evidence. *See Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("Since society has a minimal concern with the outcome of . . . private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The litigants thus share the risk of error in

roughly equal fashion"); *see also S.E.C. v. Moran*, 922 F.Supp. 867, 889 (S.D.N.Y. 1996).

### 1. *Irreparable Harm*

█ One of the most important prerequisites for the issuance of a preliminary injunction is a "demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir.1983) (citing 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 431 (1973)). *See also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (The "traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury."). Irreparable harm is "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir.1995) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

█ Generally, when a party violates a contract that contains a non-compete clause, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir.1999). If the "unique services" of the party are available to a competitor, "the employer obviously suffers irreparable harm." *Id.* at 70. In the instant case, neither Bohbot nor MDS dispute the enforceability of the MDS Covenant against them, nor does Bohbot contest the enforceability of the Bohbot Covenant against him. (*See* Hearing Tr. at 12–13). Furthermore, it is clear that Shred–It would suffer irreparable harm if MDS or Bohbot

engaged in the shredding business in New York after entering into the Agreement and the MDS and Bohbot Covenants with Shred–It. If MDS or Bohbot continued their operations and attempted to solicit shredding customers away from Shred–It, it would be difficult to quantify the amount of harm done in the past or potential harm in the future to Shred–It's attempts to establish customer relationships in the New York area.

■ This conclusion does not end the Court's analysis of irreparable harm. Relying on certain facts and inferences, Shred–It further alleges that MDS and Bohbot are continuing to operate a shredding business through Cruz and EMS. Such facts allegedly include: (1) Bohbot's payment of $203,000 to EMS and Cruz in February 2002, of which, $183,000 was sent by wire transfer to Shred Fast for the purchase of a shredding truck; (2) EMS's use of two shredding trucks and shredding bins owned by Mobile Shredding Services; (3) the appearance of a small fax legend containing the words "Nitza Cruz at MDS" at the top of letters faxed from EMS to its customers; and (4) EMS's use of Mobile Data Shred's invoice forms with small labels containing the words "Executive Mobile Shredding."

If such facts did indeed establish that Bohbot and MDS were continuing to operate shredding services through Cruz and EMS, there would be irreparable harm to Shred–It for the same reasons discussed above with respect to MDS's alleged continuation of shredding services. However, the Court is not persuaded that the preponderance of the evidence that Shred–It has adduced so far demonstrates either a likelihood of success on the merits with respect to Cruz and EMS or that the balance of hardships tips decidedly towards Shred–It.

Considering the surrounding circumstances and Cruz's testimony at the April 19, 2002 Hearing, the Court finds that it is as plausible as not that the $203,000 Bohbot gave Cruz represented a severance package for the work that she had performed for MDS in the past, rather than to allow her to secretly continue MDS's shredding business in the future. Furthermore, the appearance of MDS's name on faxes and invoices from EMS could have simply been the result of Cruz's failure to purchase new forms or change the electronic setting on her fax machine at home. (*See* Hearing Tr. at 35.) Based on the submissions by the parties and Cruz's testimony at the April 19, 2002 Hearing, the Court finds that there is insufficient evidence, at this stage in the proceedings, to establish by a preponderance of the evidence that Bohbot and MDS operated or continue to operate shredding services through Cruz and EMS.

Moreover, although there may be sufficiently serious questions going to the merits of Shred–It's claims as to make them a fair ground for litigation, the balance of the hardships do not tip decidedly in favor of Shred–It. The harm to Cruz, who operates a new and relatively small business, if she is improperly enjoined from operating her business for the few months required to hold a trial in this case will be much greater than the harm to Shred–It, a large international business, if Cruz is improperly allowed to continue operating. This is especially true in light of the fact that Bohbot and MDS are enjoined by this Order from assisting Cruz's shredding business in any way. As a result, a preliminary injunction against Cruz and EMS is unwarranted.[3]

3. The Court expresses no view as to whether Bohbot knowingly assisted Cruz to purchase a

shredding truck for EMS, possibly in violation of the covenants that he entered into with

## II. MOTION TO DISMISS SUBMIT- TED BY DEFENDANTS' BOH- BOT AND MDS

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations of the complaint and must draw all reasonable inferences in favor of the plaintiff.[4] *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[5]

In the instant case, Bohbot and MDS make a number of arguments in support of their motion to dismiss: (1) Count One of Shred–It's complaint is defective because it fails to allege that he intended to be personally liable under the MDS Covenant; (2) Counts Five and Six fail to adequately plead interference with contract; and (3) Count Seven fails to adequately plead fraud under New York law.

### A. *COUNT ONE*

Count one alleges that Bohbot and MDS breached the MDS Covenant by continuing to engage in shredding services after January 7, 2002. Under New York law, to establish a breach of contract a plaintiff must plead the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 245–46 (2d Cir.2000). In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue. *See Levy v. Bessemer Trust Co., N.A.,* No. 97 Civ. 1785, 1997 WL 431079, *5 (S.D.N.Y. July 30, 1997). "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,* 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

In the instant case, Shred–It alleges that Bohbot and MDS have breached the MDS Covenant by engaging in shredding services after January 7, 2002. Neither party disputes the existence or validity of the MDS Covenant. In spite of this, Bohbot claims that "[i]t is impossible to determine from the allegation [in the com-

Shred–It. However, even if he did so, such evidence, without more, would be insufficient to establish that he was collaborating with Cruz and EMS to continue operating a shredding business himself.

4. The Court may construe a motion to dismiss filed after the answer as one made under Rule 12(c) for a judgment on the pleadings, the standard of review for which is identical to that which applies to a motion under Rule 12(b)(6). *See Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 124 (2d Cir. 2001). Although MDS and Bohbot only cite Federal Rule of Civil Procedure 9(b) in the papers supporting their motion to dismiss, the

Court assumes that the motion is made under Federal Rule of Civil Procedure 12(c).

5. In considering a motion to dismiss, a Court may deem the complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991). Accordingly, the Court may examine the Agreement and MDS and Bohbot Covenants, which are quoted in part in the Complaint and attached in full to the aforementioned Affidavit of Joseph David in support of Shred–It's Motion for a Preliminary Injunction.

plaint] which defendant did what regarding which agreement" and that "plaintiff has not alleged clear or explicit evidence of Bohbot's intention to be personally liable under the Agreement." (Memorandum of Law by Defendants Mobile Data Shred, Inc. and Michael Bohbot in Support of Defendants' Motion to Dismiss the Complaint, dated April 18, 2002 (hereinafter "Defs. Mot."), at 2–3.) The Court disagrees.

Both Bohbot and MDS are clearly bound by the MDS Covenant. The heading of the Covenant states that is its from MDS *and* Bohbot to Shred–It. The Covenant begins with the words "The undersigned," and it is signed by Michael Bohbot. Even assuming that Count One of Shred–It's complaint mistakenly refers to the Bohbot Covenant because it refers to the European Union,[6] it is clear from the face of the complaint that it also alleges that Bohbot personally entered into the MDS Covenant with Shred–It, that he breached it and that Shred–It suffered harm as a result.

## B. *COUNT FIVE*

Count Five alleges that MDS, Bohbot and EMS "knowingly, intentionally, wrongfully and without justification interfered with Shred–It's customer relationships." (Compl.¶ 31.) However, it is unclear from the complaint whether Shred–It alleges interference with existing contractual relations or prospective business relations. Because Count Five does not identify any contract that was interfered with, the Court presumes that Shred–It's claim in this count is based on interference with prospective business relations. *Cf. Union*

*Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1136 (S.D.N.Y.1996) (requiring four elements to establish a claim for tortious interference with contractual relations: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible; and (4) damages to plaintiff).

Under New York law, to prevail on a claim of tortious interference with prospective business relations, a plaintiff must "demonstrate that the defendant interfered with business relations existing between a plaintiff and a third party, either with the purpose of harming the plaintiff or by means that are dishonest, unfair, or improper.... [T]he tort usually involves interference with a business relation not amounting to a contract." *Volvo North America Corp. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 74 (2d Cir.1988); *see also Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't.1987) ("Intentional interference with a precontractual business relationship is actionable if effected by unlawful means or, under a theory of prima facie tort, by lawful means without justification.").

In the instant case, Shred–It alleges that MDS, Bohbot, and EMS assisted each other to interfere with Shred–It's customer relationships. While the alleged method of this interference is not entirely clear from the complaint, it appears that Shred–It alleges that MDS and Bohbot interfered with the relationships that Shred–It was trying to establish with

---

**6.** In fact, only one paragraph of the Bohbot Covenant, prohibiting Bohbot from advising or assisting any person to engage in shredding services, is limited to the European Union. Other paragraphs, such as the one prohibiting Bohbot from interfering with or enticing away any person having dealings with Shred–It, have no geographical limitation. (*See* Bohbot Covenant ¶¶ (i) and (ii).)

MDS's former customers by secretly assisting Cruz and EMS to solicit those same customers. Read in this light, Shred–It's complaint states a proper claim for tortious interference with prospective business relations. The fact that the complaint fails to identify the relationships that were interfered with is of no consequence. *See SLM, Inc. v. Shelbud Prod. Corp.*, No. 92 Civ. 3073, 1993 WL 127969, *5 (S.D.N.Y. April 20, 1993) (holding that plaintiff need not identify the relationships that were allegedly interfered with at the pleading stage of a litigation).

## C. *COUNT SIX*

 Counts Six alleges that MDS interfered with the "Non-compete agreement between Shred–It and defendant Bohbot." (Compl.¶ 35.) The four elements that a plaintiff must plead to establish a claim for tortious interference with contractual relations under New York law are discussed above. *See Union Carbide*, 944 F.Supp. at 1136. Reading the complaint on its face, it is not clear which non-compete agreement Count Six refers to. The MDS Covenant, discussed above, was entered into by both Bohbot and MDS at the same time, in the same document. To the extent that Shred–It alleges that MDS interfered with this agreement, it fails to state a claim because MDS was a principal and not a third party to the contract. *See Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 554 N.Y.S.2d 867 (1990) (holding that only a stranger to a contract can be liable for tortious interference with that contract).

However, the complaint also makes reference to the Bohbot Covenant. (*See* Compl. ¶ 13.) While it is difficult to conceive of how MDS could have interfered with Bohbot's non-compete agreement through some agent other than Bohbot himself, the Court is not persuaded that Shred–It can prove no set of facts in support of this claim. It is conceivable that evidence obtained during the course of discovery or at trial could reveal that some other agent of MDS, acting within the scope of his or her authority, interfered with Bohbot's non-compete agreement.

## D. *COUNT SEVEN*

Count Seven alleges that Bohbot and MDS defrauded and deceived Shred–It by entering into the MDS and Bohbot Covenants with "no intention of honoring those agreements." (Compl.¶ 39.) Instead, Shred–It alleges that MDS and Bohbot made statements in the two covenants knowing that "they planned not to honor those agreements." (*Id.*) In essence, Shred–It claims that a promise made with a preconceived and undisclosed intention of not performing constitutes a fraudulent misrepresentation. Bohbot and MDS assert, *inter alia*, that Shred–It's allegations fail to adequately plead a claim for fraud.

In *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), the New York Court of Appeals held that:

> It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

Furthermore, most courts that have considered the issue under New York law "have held that a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the promise." *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1160–61 (S.D.N.Y.1996) (citing *Caniglia v. Chicago*

*Tribune–New York News Syndicate, Inc.*, 204 A.D.2d 233, 612 N.Y.S.2d 146, 147 (1st Dep't.1994); *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 602 N.Y.S.2d 116, 117 (1st Dep't.1993); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 529 N.Y.S.2d 777, 779 (1st Dep't.1988); *Comtomark, Inc. v. Satellite Communications Network, Inc.*, 116 A.D.2d 499, 497 N.Y.S.2d 371, 372 (1st Dep't.1986); *PI, Inc. v. Quality Prods., Inc.*, 907 F.Supp. 752, 761 (S.D.N.Y.1995); and *Sudul v. Computer Outsourcing Services*, 868 F.Supp. 59, 62 (S.D.N.Y.1994)).

■■■ Therefore, when a plaintiff pleads a claim for fraud that is related to a breach of contract claim, she must allege: "(1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Papa's–June Music*, 921 F.Supp. at 1161; *see also Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996).

■■■ In the instant case, Shred–It has not alleged the violation of a legal duty independent of those contained in the MDS and Bohbot Covenants. Shred–It's cause of action in Count Seven, which asserts common law fraud and deceit, is based entirely upon alleged misrepresentations by MDS and Bohbot regarding their intent to perform under the covenants. Neither MDS nor Bohbot made any promise separate and distinct from those contained in the two covenants. The misrepresentations that Shred–It alleges were fraudulently made by MDS and Bohbot were not collateral to the terms of the two covenants. Accordingly, Shred–It's complaint fails to allege a claim of fraud that is

sufficiently distinct, collateral or extraneous from its breach of contract claim.

In addition, Shred–It has not set forth special damages caused by the alleged fraudulent representations that would not otherwise be recoverable under the breach of contract measure of damages. *Papa's–June Music*, 921 F.Supp. at 1161. Shred–It's complaint generally avers that it has been harmed by the deceit and fraud of MDS and Bohbot and that it is entitled to compensatory damages as a result. (*See* Compl. ¶ 44.) However, the complaint alleges nothing that would cast this recovery as distinct from the recovery sought under the breach of contract claim. *See Goodstein Construction Corp. v. City of New York*, 80 N.Y.2d 366, 373, 590 N.Y.S.2d 425, 604 N.E.2d 1356 (1992) (holding that contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed) (citing Restatement (Second) of Contract §§ 344 and 347, comment a).

In sum, the Court finds that, because Shred–It's complaint fails to allege (1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages, Shred–It's complaint fails to plead a proper claim for fraud or deceit.

### III. *CONCLUSION AND ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that Michael Bohbot and Mobile Data Shred, Inc. are enjoined from violating the MDS Covenant, attached as Schedule F to the November 20, 2001 As-

set Purchase Agreement, and the Bohbot Covenant, executed on January 7, 2002, including, but not limited to: (1) providing any form of assistance, financial, advisory or otherwise, to Nitza Cruz, Executive Mobile Shredding or any other person or persons in the operation, planning or management of any shredding services similar to the shredding services provided by Shred–It in the United States or Canada; or (2) soliciting, communicating with an intent to solicit, or attempting to entice away any person having dealings with Shred–It in North America or Canada; and it is further

**ORDERED** that Shred–It's motion for a preliminary injunction with respect to Nitza Cruz and Executive Mobile Shredding is DENIED; and it is further

**ORDERED** that the motion to dismiss Shred–It's complaint by Michael Bohbot and Mobile Data Shred, Inc. is GRANTED with respect to Count Seven and DENIED with respect to Counts One, Five and Six; and it is further

**ORDERED** that a trial in this matter will begin on July 16, 2002 at 9 a.m.; and it is further

**ORDERED** that all parties submit the joint pre-trial order, joint proposed voire dire questions, joint proposed jury charge, and joint pre-trial memoranda, as required under this Court's individual practices,[7] no later than June 16, 2002.

**SO ORDERED.**

---

7. Available from the Clerk of the Court or on the internet at: http://www.nysd.usc- ourts.gov/Individual_Practices/Marrero.pdf.