**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RODA DRILLING COMPANY;
RODA, LLC; ROLAND ARNALL;
DAWN ARNALL; THE ROLAND
AND DAWN ARNALL LIVING
TRUST,

      Plaintiffs-Counter-Defendants -
      Appellees,

v.

RICHARD SIEGAL, an individual;
BIPPY SIEGAL, an individual;
PALACE OPERATING COMPANY, a
corporation,

      Defendants - Appellants,

and

PALACE EXPLORATION
COMPANY, a corporation; B&R
EXPLORATION CO., INC.;
BISTATE OIL MANAGEMENT
CORPORATION; OIL AND GAS
TITLE HOLDING CORPORATION,

      Defendants-Counter-Claimants-
      Appellants.

No. 08-5115

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 07-CV-00400-GKF-FHM)**

Stanley Arkin (Michelle A. Rice, Sean R. O'Brien and Justin M. Sher of Arkin, Kaplan, Rice, L.L.P., New York, New York, and Curtis M. Long and Steven J. Adams of Fellers, Snider, Blakenship, Bailey & Tippens, P.C., Tulsa, Oklahoma, on the briefs), for Defendants - Appellants and Defendants-Counter-Claimants - Appellants.

Oliver S. Howard (M. Benjamin Singletary, Joseph W. Morris and Richard B. Noulles of Gable Gotwals, with him on the briefs), Tulsa, Oklahoma, for Plaintiffs-Counter-Defendants - Appellees.

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**KELLY**, Circuit Judge.

This is an appeal from the grant of a preliminary injunction by a magistrate judge exercising consent jurisdiction. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; see RoDa Drilling Co. v. Siegal, No. 07-CV-400-GKF-FHM, 2008 WL 4056229 (N.D. Okla. Aug. 11, 2008). Defendants-Appellants and Defendants-Counterclaimants-Appellants (collectively referred to as Defendant or Palace) argue that the magistrate judge incorrectly applied the preliminary injunction standard in granting Plaintiffs-Counter-Defendants-Appellees (collectively referred to as Plaintiff or RoDa) a preliminary injunction.

On July 19, 2007, Plaintiff RoDa filed a complaint against Defendant Palace, alleging fraud, breach of contract, and breach of fiduciary duty with respect to various oil and gas investments Palace made on RoDa's behalf, and seeking the transfer of record title to RoDa of these oil and gas properties, in

addition to various other relief.[1]  App. 43.  On January 28, 2008, RoDa sought a

preliminary injunction seeking record title to the various oil and gas investments.

App. 584.  The magistrate judge granted the injunction on July 23, 2008.  RoDa

Drilling Co. v. Siegal, No. 07-CV-400-GKF-FHM, 2008 WL 2891122 (N.D. Okla.

July 23, 2008) (later corrected and superseded on August 11, 2008, RoDa Drilling

Co., 2008 WL 4056229).  Palace initially filed a motion to stay the injunction on

July 30, 2008, arguing that it was improvidently granted.  App. 2180.  The

magistrate judge denied the motion, RoDa Drilling Co. v. Siegal,  No. 07-CV-

400-GKF-FHM, 2008 WL 3560976 (N.D. Okla. Aug. 11, 2008), and Palace

subsequently moved this court for a stay.  On September 10, 2008, we granted the

stay "[i]n light of the short time remaining" before the appeal came before the

merits panel.  RoDa Drilling Co. v. Siegal, No. 08-5115, at 2 (10th Cir. Sept. 10,

2008).  After oral argument, this panel dissolved the stay.  RoDa Drilling Co. v.

Siegal, No. 08-5115, at 2 (10th Cir. Nov. 20, 2008).

Our jurisdiction arises under 28 U.S.C. § 1292(a)(1), 28 U.S.C. § 636(c)(3),

and Fed. R. Civ. P. 73(c), and we affirm the grant of the preliminary injunction.

---

[1]  Specifically, in its complaint, RoDa additionally sought "damages resulting from Defendants' actions for which transfer of record title does not provide . . . full compensation for Defendants' misconduct," as well as an accounting of the relevant properties and the use of RoDa's cash by Defendants, an order that the promissory notes at issue are not enforceable, and punitive damages, among other relief.  App. 62.

Background

Roland[2] and Dawn Arnall created the general partnership RoDa Drilling Company in 2002. App. 1745, 2889-2901. RoDa, LLC, and The Roland and Dawn Arnall Living Trust are partners of RoDa. App. 45.

In April 2002, the Arnalls first met with Richard Siegal, a principal of Palace Exploration Company, Palace Operating Company, B&R Exploration Co., Inc., Bistate Oil Management Corp., and Oil and Gas Title Holding Corp. App. 45, 47, 1748. The purpose of the meeting was to investigate potential oil and gas investments, which would be managed by Mr. Siegal through Palace. App. 47-49; 1748-51. After several discussions, the Arnalls agreed to participate. RoDa Drilling, 2008 WL 4056229, at *1, ¶ 2.

The parties agreed that RoDa would provide funding to Palace for the purchase of oil and gas properties. Id. Palace would hold the properties in its own name (so the parties might benefit from Palace's alleged reputation in the marketplace), managing and developing the properties on behalf of the Arnalls, and paying RoDa revenues from the properties. Id.; App. 1764-65, 1767. Under the agreement, RoDa could request transfer of record title to the properties at any time. App. 1765, 1767, 1872. In addition to capital investment funds, RoDa was to undertake deferred payment obligations to Palace ("promissory note

---

[2] Roland Arnall passed away in March 2008. App. 1745.

obligations") as compensation to Palace and as part of the intangible drilling costs of the properties. App. 1754-55, 1765-66, 1870-71. RoDa was to pay these additional promissory note obligations out of any returns on the properties. App. 1754-55, 1761, 1765-66, 1870-71. These full-recourse notes ostensibly supported RoDa's tax deductions for intangible drilling costs, App. 1754-57, 1833, 1870; however, the Internal Revenue Service has since indicated that it may challenge these deductions based on RoDa's lack of record title to the properties, App. 955-59; see also RoDa Drilling, 2008 WL 4056229, at *3, ¶¶ 16, 17.

In May 2002, RoDa provided Palace $25 million as its initial capital contribution. App. 1760-61, 1829. Throughout 2002, RoDa invested $125 million, and over the next four years RoDa invested many more millions of dollars in various properties, all of which were held in the name of Palace. App. 1767-69, 1776-77, 1790-91, 1829. From 2002 through 2004, RoDa invested $875 million in cash, and orally agreed to invest an additional $1.05 billion in notes. App. 1755-57, 1767-69, 1776-77, 1790-91, 1793. RoDa has invested nearly $1 billion in cash since 2004 to preserve the value of its properties, for an overall total investment of nearly $1.9 billion. App. 845-46, 2536.

Remarkably, no writing was ever executed by both parties on either the capital investments or the promissory note payments. App. 877-78, 947, 1777-78, 1828. However, Palace did attempt to memorialize the agreement terms on at

-5-

least two occasions. In 2004, Palace delivered to RoDa a proposed Prospect Agreement, which explicitly required Palace to transfer record title to the RoDa properties within thirty days of a written request. App. 2281-87, at 2, ¶ 5. Palace executed this agreement, but RoDa did not. App. 880-82, 923-25. In addition, Palace delivered to RoDa a Turnkey Drilling Contract. App. 2279-80; see Aplee. Br. at 19. RoDa declined to sign this contract, stating that the parties had not reached a "full meeting of the minds on all the terms of the deal." App. 923; see also App. 880. Over the years, the parties have maintained their relationship; however, on two occasions, RoDa has requested transfer of record title to its properties, but due to administrative issues the transfers, while attempted, were never completed. App. 808-14; see also RoDa Drilling, 2008 WL 4056229, at *2, ¶ 12. The parties dispute whether Palace holds a security interest in the RoDa properties or whether the transfer of title is conditioned on RoDa's satisfaction of the promissory note agreement. App. 847-48, 1765, 1767, 1798, 1873; Aplt. Br. at 8-11; Aplee. Br. at 11.

In approximately 2005, the Arnalls became concerned about their investments with Palace, App. 1779-84, and retained consultants to assist them with the oil and gas investments. App. 1783-84, 1877-83, 1902-08. As a result of the consultants' findings, RoDa requested transfer of title to the properties in late 2006 so it could effectively manage them and implement its own business and investment decisions. App. 476, 1885-89. At point, Palace linked the

-6-

transfer of title to RoDa's satisfaction of its outstanding "obligations" to Mr. Siegal and Palace, including requests for additional capital and promissory note payments. App. 476, 847-48, 1767. Since June 2007, RoDa has been working directly with Mr. Robert Zinke, the manager of the largest firm operating many of the properties. App. 1061-62, 1238, 1910-11, 1914-16. During 2006 and 2007, RoDa met with Palace several times in an effort to resolve the dispute, including in September 2007. App. 1788-90. Thus far, the parties have not been able to resolve their issues, and Palace has refused to transfer record title to any of the oil and gas properties despite RoDa's requests. App. 1788-89, 1886-88.

After an evidentiary hearing, the magistrate judge ordered transfer of record title to RoDa of all interests, properties, and assets beneficially held by Palace. RoDa Drilling, 2008 WL 4056229, at *9. Palace claims the magistrate erred in (1) failing to apply the heightened standards applicable when granting a "mandatory" preliminary injunction that alters the status quo; (2) finding that RoDa will sustain irreparable injury sufficient to warrant such an injunction; (3) concluding that RoDa has demonstrated a substantial likelihood of success on the merits in its breach of contract and fiduciary duty claims; (4) holding that RoDa made a strong showing that the balance of harms weighs in its favor; and (5) failing to require that RoDa post a bond or otherwise ensure satisfaction of its alleged $1 billion in outstanding obligations to Palace. Aplt. Br. at 2-3.

## Discussion

We review the grant of a preliminary injunction for abuse of discretion. O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 342 F.3d 1170, 1176-77 (10th Cir. 2003), affirmed en banc, 389 F.3d 973 (10th Cir. 2004) (per curiam), affirmed, 546 U.S. 418 (2006); Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1153 (10th Cir. 2001). "A district court abuses its discretion if it commits an error of law, or is clearly erroneous in its preliminary factual findings." Dominion Video, 269 F.3d at 1153 (internal quotation marks omitted). In our previous cases, we have characterized an abuse of discretion as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Winnebago Tribe of Neb. v. Stovall, 341 F.3d 1202, 1205-06 (10th Cir. 2003) (quoting Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)). We will set aside a preliminary injunction for abuse of discretion when the district court applies the wrong legal standard in granting a motion for such an injunction. Dominion Video, 269 F.3d at 1153 (citing SCFC ILC, Inc. v. Visa, USA Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)). Because the standard for abuse of discretion is high, and we find that the magistrate judge clearly set forth its reasoning for granting the injunction, we affirm. See Winnebago Tribe, 341 F.3d at 1206.

I.      Application of a Heightened Standard

To obtain a preliminary injunction, the moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); see also O Centro, 342 F.3d at 1177.  Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs.[3]  O Centro, 389 F.3d at 977.  Therefore, before we will grant such relief, we require a movant seeking such an injunction to make a heightened showing of the four factors.  Id. at 977, 979.  In doing so, our aim is to minimize

---

[3]  Certain types of preliminary injunctions are disfavored: (1) preliminary injunctions that alter the status quo, (2) mandatory preliminary injunctions, and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial.  O Centro, 389 F.3d at 975.  When a disfavored injunction is sought, the modified likelihood-of-success-on-the-merits test, is not appropriate—a movant must demonstrate a substantial likelihood of success on the merits, in addition to the other elements.  Id. at 980.  Under the modified test, a movant need only show "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."  Walmer v. United States Dep't of Defense, 52 F.3d 851, 854 (10th Cir. 1995).  We further note that, in the instant case, the grant of a mandatory preliminary injunction does not award RoDa the entirety of its requested relief.  See App. 62.

any injury that would not have occurred but for the court's intervention. Id. at 978. While we recognize that mandatory preliminary injunctions are traditionally disfavored, Schrier v. Univ. of Colo., 427 F.3d 1253, 1258-59 (10th Cir. 2005), when the moving party demonstrates that the "exigencies of the case require extraordinary interim relief," the district court may grant the motion upon satisfaction of the heightened burden. O Centro, 389 F.3d at 978.

Palace argues that the magistrate judge failed to apply the appropriate standard for granting a mandatory preliminary injunction. See Aplt. Br. at 20-22. It claims that the ruling does not identify the requisite "exigencies" upon which such extraordinary relief may be granted and fails to impose, both implicitly and explicitly, the heightened "strong showing" burden on RoDa. Id. at 21-22. Essentially, it argues that, because RoDa already held complete control over the properties at issue and Palace never once contravened RoDa's decision-making authority, it was impossible for RoDa to demonstrate irreparable harm. Id.

Palace's arguments lack merit. The district court methodically laid out the standard it relied upon, citing all four factors, discussing the unusual nature of a mandatory injunction, and declaring that an injunction of this sort "'must be more closely scrutinized to assure the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" RoDa Drilling, 2008 WL 4056229 at *5, ¶ 2 (quoting O Centro, 389 F.3d at 975). The magistrate

-10-

judge further announced that he had "more closely scrutinized the . . . factors to assure that the exigencies of the case support the granting of [the motion]." Id. at *5, ¶ 4. While the court did not discuss the heightened burden explicitly, it is clear from the cited language of the order that the magistrate judge was aware that a mandatory injunction is an unusual form of relief and one that must not be granted without heightened consideration.

Palace further claims that the district court failed to identify any particular exigencies that would warrant such relief. The contention that the magistrate judge erred because he failed to engage in the proper analysis ignores the many pages of factual findings and legal analysis in which the magistrate found that (1) RoDa did not grant Palace any interest in the properties, (2) transfer of title was not conditioned on any other obligation RoDa may have had to Palace, (3) Palace refused to transfer record title to RoDa, (4) Palace continued up until the date of the order to retain revenues generated from the properties each month, and (5) for a variety of other reasons RoDa had been suffering and would continue to suffer irreparable harm were the title transfers not effectuated. See id. at *2-4, ¶¶ 9, 11, 12, 13, 14, 15, 19. In sum, the magistrate judge, after hearing the evidence, found that RoDa would be denied the opportunity to make use of its own property during the pendency of litigation without the transfer of legal title. Surely, Palace must recognize that there is a difference between holding full legal title to a property versus merely "making all crucial decisions," Aplt. Br. at 21, about a

-11-

property while another holds record title. The fact is that Palace objects to the grant of a preliminary injunction because it hopes to recover from RoDa financially, and by retaining legal title to the properties, Palace would ensure a source for that recovery. We have never before required an explicit listing of "exigencies," nor do we here. The court clearly found that the situation required immediate action, and we do not see how the order is deficient in any way. The magistrate judge's decision on this point certainly does not rise to the level of an abuse of discretion.

## II.    Irreparable Harm

Palace next claims that the magistrate judge erred when he found irreparable harm sufficient to issue the injunction. See Aplt. Br. at 22-31. In essence, Palace claims that no harm exists that cannot be remedied by money damages, and that RoDa cannot claim irreparable harm in light of its delay in requesting a preliminary injunction. We reject these arguments.

We have previously held that a plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (quoting Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000)) (emphasis omitted). Purely speculative harm will not suffice, but rather, "[a] plaintiff who

-12-

can show a significant risk of irreparable harm has demonstrated that the harm is not speculative" and will be held to have satisfied his burden. Id. In determining whether a plaintiff has made the requisite showing, we further assess "whether such harm is likely to occur before the district court rules on the merits." Id. at 1260. If "'a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.'" Id. (quoting 11A Wright, Miller & Kane, Federal Practice and Procedure § 2948.1, at 139-40).

In conducting a review of the relevant facts, we find that RoDa presented sufficient evidence to sustain its claim of irreparable harm. The magistrate judge held that, were the status quo preserved pending litigation, RoDa would be deprived of control of its real property, thus constituting irreparable harm, and that RoDa's delay in filing for a preliminary injunction did not bar the relief. See RoDa Drilling, 2008 WL 4056229, at *8, ¶¶ 22-26. Other courts have held that, when "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." 2660 Woodley Road Joint Venture v. ITT Sheraton Corp., No. Civ.A. 97-450 JJF, 1998 WL 1469541, at *6 (D. Del. Feb. 4, 1998); see also Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991) (indicating that "'[r]eal estate has long been thought unique'" (quoting K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989))); Southland Corp. v. Froelich, 41 F. Supp. 2d 227, 242 (E.D.N.Y. 1999). We note that the Supreme

Court has rejected the application of categorical rules in injunction cases. eBay

Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-94 (2006). We need not decide

whether it would be appropriate to assume the existence of irreparable harm

because we are dealing with interests in real property; rather, as we explain

below, RoDa has made such a showing, establishing its entitlement to injunctive

relief.

The record clearly establishes that RoDa is being denied its right to interest

in its real property. While RoDa provided all of the funds to purchase the

property—a large but quantifiable amount of money—RoDa has been denied

unfettered ownership of that property, resulting in delays, missed opportunities,

and, most importantly, unquantifiable damages. See App. 1014-26, 1766, 1796-

97, 1887-88, 1892-93, 2507; see also Aplee. Br. at 42-45. In making its initial

arguments, RoDa provided expert testimony on the issue of irreparable harm and

the fact that, at trial, the damages suffered absent a preliminary injunction likely

could not be proven. App. 1227-29. Essentially, while being denied record title,

RoDa simply cannot participate in the everyday operations of its own interests,

and the damages arising from that denial are incalculable. See Kikumura v.

Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (noting that "[a] plaintiff suffers

irreparable injury when the court would be unable to grant an effective monetary

remedy after a full trial because such damages would be inadequate or difficult to

ascertain"). In sum, these properties are income producing, and realizing their

income potential depends upon active management of the properties. That makes potential damages most difficult to prove, if not practically unquantifiable.

As the magistrate judge aptly noted, ownership, maintenance, and development of this enterprise is not a passive endeavor, and it is increasingly difficult for RoDa to manage its properties through an intermediary. RoDa Drilling, 2008 WL 4056229, at *3-4, ¶ 19. Decisions concerning drilling, joint operating agreements, sales, farm-outs, operators, and the like must be made day to day. Id. In addition, RoDa has been unable to rely on the properties to finance its expenditures, see, e.g., App. 1895-96, and the Internal Revenue Service has indicated that it may challenge RoDa's intangible drilling cost deductions because RoDa does not hold record title to the properties, resulting in severe tax consequences for RoDa, App. 955-59, 1788, 1796, 1798; see also RoDa Drilling, 2008 WL 4056229, at *3, ¶¶ 16, 17. The magistrate judge's finding that the current arrangement is unworkable given the lost opportunities and costs and inefficiencies of such an arrangement is not clearly erroneous. Therefore, after reviewing the record, we find that the magistrate judge did not abuse his discretion in finding irreparable harm.

We also reject Palace's contention that a finding of irreparable harm is foreclosed because of RoDa's delay in filing for injunctive relief. To be sure, our case law dictates that "'delay in seeking preliminary relief cuts against finding irreparable injury.'" Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and

-15-

Rehabilitation Servs., 31 F.3d 1536, 1543-44 (10th Cir. 1994) (quoting N.J. Ass'n of Health Care Facilities, Inc. v. Gibbs, 838 F. Supp. 881, 928 (D.N.J. 1993)). However, delay is but one factor in the irreparable harm analysis,[4] and in Kansas Health Care Association, we held that a three-month delay in filing did not defeat a claim of irreparable injury when the delay was attributable to plaintiff's attempts to negotiate and the need for further documentation of the harm. Id. at 1544. The delay in that instance did not alter the outcome of the proceedings. Id.

We arrive at the same conclusion in the instant case. Here, RoDa requested a preliminary injunction on October 31, 2007, App. 144, and amended that request to seek transfer of title on January 28, 2008, App. 584-85. We recognize that RoDa first became concerned about Palace's management of the properties in as early as 2005; however, the record clearly establishes that RoDa's delay in filing its complaint arose from its attempts to resolve the dispute, rather than a decision merely to "sit on its rights." Aplt. Br. 28. At the outset, RoDa hired consultants to investigate its concerns. App. 1783-84, 1877-83, 1902-08. Then, in late 2006, RoDa requested transfer of title to the properties. App. 476, 1885-

---

[4] Palace presents a number of cases to illustrate that a delay in filing for a preliminary injunction "defeats a finding of irreparable harm as a matter of law." Aplt. Br. at 30. However, these cases merely confirm that delay is simply one consideration in the overall irreparable harm analysis. See, e.g., GTE Corp. v. Williams, 731 F.2d 676, 678-79 (10th Cir. 1984); Utah Gospel Mission v. Salt Lake City Corp., 316 F. Supp. 2d 1201, 1221-22 (D. Utah 2004), aff'd on other grounds, 425 F.3d 1249 (10th Cir. 2005).

89. Finally, RoDa held several meetings with Palace representatives through 2007, even after the original complaint was filed and just prior to RoDa's request for a preliminary injunction, trying to find a resolution to the parties' problems. See App. 1788-90. Moreover, Palace has not argued that the delay in any way disadvantaged its interests. We therefore affirm the magistrate judge's holding that the delay in this case was not unreasonable and did not alter the irreparable harm analysis. See RoDa Drilling, 2008 WL 4056229, at *8, ¶¶ 24, 26.

On a final note, we reject Palace's claim that the magistrate judge erred in his application of the preliminary injunction to the properties' cash flows. See RoDa Drilling, 2008 WL 4056229, at *9-10. The magistrate judge implemented his order enjoining Palace from "withholding and failing to distribute to [RoDa] any funds, proceeds, and operating revenues attributable to [the properties]." Id. at *10. Palace neglects to discuss that this portion of the order was interim in nature, merely applicable to the period prior to Palace's transfer of title, and intended to effectuate the overall purpose of the injunction. See Aplt. Br. at 31. Therefore, the argument is unavailing.

III.    Substantial Likelihood of Success

Palace next argues that the magistrate judge erred when he found that RoDa was substantially likely to succeed on its breach of contract and fiduciary duty claims. See Aplt. Br. at 31-40; RoDa Drilling, 2008 WL 4056229, at *5-7.

A.    The Breach of Contract Claim

Under New York law,[5] a breach of contract claim succeeds when the following elements are met: "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and[] (4) damages resulting from the breach." Marks v. N.Y. Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) (citation omitted).  The magistrate judge rejected Palace's argument that RoDa could not succeed on this claim because it had defaulted on the promissory notes, finding no evidence that satisfaction of the notes was a condition of title transfer, that there was any agreement between the parties with respect to regular repayment of the notes, and that the notes were part of the purchase price of the properties.  See RoDa Drilling, 2008 WL 4056229, at *6, ¶ 11.  The court further found that RoDa suffered damages when Palace continually refused to transfer title despite RoDa's repeated requests.  Id. at *6, ¶ 12.  Therefore, the court held, RoDa satisfied the substantial likelihood of success necessary to grant a preliminary injunction.  Id. at *6, ¶ 13.  We agree.

Palace here attempts to link the agreement on the promissory notes with the development agreement, despite a complete lack of evidence to support this claim.  The parties do not dispute that they entered into an oral contract wherein RoDa would fund the purchase of properties to be held and managed by Palace

---

[5]  The parties do not dispute that New York law applies.

until such time as RoDa requested transfer of legal title. See RoDa Drilling, 2008 WL 4056229, at *1, ¶ 2; App. 1764-65, 1767, 1798, 2267. However, there simply is no evidence that the development agreement was in any way connected to satisfaction of the promissory notes, which supposedly would allow RoDa to benefit from certain tax deductions. App. 1754-57, 1761, 1816-17. In attempting to find support in the case law, Palace misconstrues TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 89 (2d Cir. 2005). There, the court stated that the intent of the parties controls whether multiple writings will be construed as a single agreement, and that such a decision, in the absence of certainty, is typically a factual question for a jury. Id. However, that case involved two documents executed at different times but intended to effectuate the same result. Id. at 89-90. In this case, the only documentary evidence of any agreement is the Prospect and Turnkey Drilling[6] contracts, which RoDa never executed. App. 880-82, 923-25, 1777, 2279-80. Moreover, RoDa presented ample testimony that the agreements were not linked, and Palace, in its attempts to transfer title in 2004 and 2006, never imposed any conditions on those transfers. App. 814, 878, 1765, 1767, 2272-80, 3468-81. Perhaps most tellingly, Mr. Siegal failed to testify to the fact that the promissory notes and the development agreement were

---

[6] The Turnkey Drilling Contract contained a security interest clause; however, RoDa did not execute that agreement, citing a failure to reach a meeting of the minds as the reason. See App. 922-25, 2274-80.

-19-

interdependent. In sum, Palace simply has not presented any countervailing evidence that would undermine the magistrate judge's conclusion that the development agreement was not conditioned on satisfaction of the promissory notes, or in fact linked in any way.

Palace's claim to a security interest in the property fails for the same reasons—Palace simply has not presented evidence of such an interest. To establish its interest, Palace merely reiterates its reliance on the unsigned Turnkey Drilling Contract, which includes a clause granting an interest in the drilled wells. See Aplt. Br. at 37. The fact that the contract remains unexecuted demonstrates only Palace's intent to create a security interest, not the parties' agreement that such an interest exists. We do not dispute that contracts under New York law may be based on multiple documents that are not created contemporaneously; however, we simply cannot find a contract provision based on the parties' conduct alone when the evidence presented indicates that RoDa did not affirmatively agree to that provision. See Deutsche Asset Mgmt., Inc. v. Callaghan, No. 01 Civ.4426 CBM, 2004 WL 758303, at *15-16 (S.D.N.Y. April 7, 2004) (unpublished). We conclude that the magistrate judge did not abuse his discretion in finding no security interest because Palace points to nothing that would support such a conclusion, either in the evidence or by operation of law.

B.     The Breach of Fiduciary Duty Claim

We reach the same conclusion on Palace's claim that the magistrate judge

abused his discretion in holding that RoDa had demonstrated a substantial likelihood of success on its breach of fiduciary duty claim. See Aplt. Br. at 39-40. The magistrate judge found that a fiduciary relationship existed between the parties and that Palace was "under a duty to act for the benefit of [RoDa] in making decisions regarding the oil and gas properties purchased with [RoDa's] money." See RoDa Drilling, 2008 WL 4056229, at *7, ¶ 17; see also id. at *7, ¶ 15. However, Palace argues that any duty it has to transfer title is contingent on the satisfaction of the promissory notes, and that the obligation to transfer title is merely contractual and does not give rise to a fiduciary duty.

We disagree and affirm the magistrate judge's findings. At the outset, we note that, under New York law, the "same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." Sally Lou Fashions Corp. v. Camhe-Marcille, 755 N.Y.S.2d 67, 69 (App. Div. 2002) (quoting Mandelblatt v. Devon Stores, 521 N.Y.S.2d 672, 676 (App. Div. 1987)); but see William Kaufman Org., Ltd. v. Graham & James LLP, 703 N.Y.S.2d 439, 442 (App. Div. 2000) (distinguishing Mandelblatt and holding that a "cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand"). To establish a breach of fiduciary duty, RoDa "must prove the existence of a fiduciary relationship, misconduct by the defendant and damages that were directly caused by

-21-

defendant's misconduct."  Kurtzman v. Bergstol, 835 N.Y.S.2d 644, 646 (App. Div. 2007).  Palace's argument that its duty to transfer title is purely contractual in nature overlooks Mrs. Arnall's uncontroverted testimony that Mr. Siegal held discretion over the properties, that RoDa had effectively created a form of "trust" wherein Mr. Siegal would manage the properties for the benefit of RoDa, and that the Arnalls had no experience in the oil and gas industry.  App. 1749-50, 1759-60, 1764-65.  RoDa's reliance on Palace's judgment is clear, and, based on the record, we do not agree that the magistrate judge abused his discretion.

Finally, we briefly address Palace's argument that any duty to transfer title did not arise until the promissory notes were satisfied in full.  See Aplt. Br. at 40. We reject this argument for the same reasons we rejected it when raised in the breach of contract context: Palace simply has not adduced evidence to establish that the promissory notes and the development agreement were linked in any fashion.

IV.    The Balance of Harms

Palace further alleges that the magistrate judge erred in concluding that RoDa made a strong showing that the "balance of harms" weighed in RoDa's favor.  See Aplt. Br. at 41-42.  Palace bases its claim on two arguments: (1) that the transfer of title will decimate any security interest in the properties that may be found at trial because RoDa intends to sell the properties immediately; and (2) that the transfer involves a lot of work that could potentially be undone if the trial

court finds in Palace's favor.  Id.

These arguments also lack merit.  The magistrate judge found that "the irreparable injury to Plaintiffs which attends being denied title to the subject properties far outweighs any harm the proposed injunction may cause Defendant." RoDa Drilling, 2008 WL 4056229, at *8, ¶ 27.  As discussed above, the parties did not reach an agreement on whether Palace holds a security interest in the properties or that the promissory note obligations are linked to the development agreement; therefore, it is clear that Palace is holding legal title with "no real claim to ownership of the properties."  Id.  Without any evidence to the contrary, we do not find error.  Here, the magistrate judge was required to weigh Palace's potential harm in transferring the property against RoDa's actual injury in being deprived of legal title to the property for which it had paid in full.  We recognize that the magistrate judge's issuance of an injunction presents some potential for injury to Palace; however, aside from speculation on Palace's part that the trial court will find a security interest and that the transfer involves an enormous amount of work, Palace provides little else upon which we can rely to find that this potential harm outweighs RoDa's actual injury in being deprived of its real property.

V.     The Bond Requirement

Palace also claims that the magistrate judge erred in failing to require RoDa to post a bond upon issuance of the injunction.  See Aplt. Br. at 42-43.  Relying

-23-

on Fed. R. Civ. P. 65(c), Palace argues that a court "is *required* to order the moving party" to post security when issuing a preliminary injunction. Id. at 42 (emphasis added). Palace misconstrues the rule, which actually says, "The court may issue a preliminary injunction . . . only if the movant gives security *in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). In making his determination, the magistrate judge cited directly to Rule 65(c) and, finding that Palace had no ownership or security interest in the properties, exercised his discretion in declining to require a security interest. See RoDa Drilling, 2008 WL 4056229, at *8-9, ¶ 29. Because our case law indicates that trial courts have "wide discretion under Rule 65(c) in determining whether to require security," we do not find an abuse of that discretion here. Winnebago Tribe, 341 F.3d at 1206 (internal quotation marks omitted). The cases upon which Palace relies only underscore the latitude given to courts in making bond decisions. See, e.g., SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs., Inc., No. 00-3051, 2000 WL 797338, at *7 (10th Cir. May 26, 2000) (unpublished); Corning Inc. v. PicVue Elecs., Ltd., 365 F.3d 156, 158 (2d Cir. 2004); Hill v. Xyquad, Inc., 939 F.2d 627, 632 (8th Cir. 1991). The magistrate judge based his decision on the lack of proof that Palace had any interest in the properties, and we find that his discretion in finding so was properly exercised.

AFFIRMED.