**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 20, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RODA DRILLING COMPANY;
RODA, LLC; ROLAND ARNALL;
DAWN ARNALL; and THE ROLAND
AND DAWN ARNALL LIVING
TRUST,

     Plaintiffs-Appellees,

v.

RICHARD SIEGAL, an individual;
BIPPY SIEGAL, an individual;
PALACE EXPLORATION
COMPANY, a corporation; PALACE
OPERATING COMPANY, a
corporation; B&R EXPLORATION
CO., INC.; BISTATE OIL
MANAGEMENT CORPORATION;
and OIL AND GAS TITLE HOLDING
CORPORATION,

    Defendants-Appellants.

No. 10-5139

(D.C. No. 4:07-CV-00400-GFK-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO,** and **MATHESON,** Circuit Judges, and **FREUDENTHAL,**
District Judge.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Nancy D. Freudenthal, Chief United States District Judge for the
District of Wyoming, sitting by designation.

This case involves a contract dispute between business entities concerning the interpretation of a settlement agreement designed to resolve earlier litigation arising from the refusal by Defendants-Appellants (Palace) to transfer record title to oil and gas properties to Plaintiffs-Appellees (RoDa). By consent, the earlier litigation was referred to the district court magistrate judge for resolution. The Parties settled their earlier litigation by agreement, which provided in part for Palace to assign specified oil and gas properties to RoDa (Agreement). The Agreement also provided that, upon motion, the district court magistrate judge would reopen the earlier litigation if a dispute arose among the Parties, and the magistrate judge would resolve the matter by Opinion and Order rather than by Report and Recommendation.

A dispute arose concerning whether the Agreement requires Palace to assign to RoDa an overriding royalty interest reserved to Palace under an assignment of Palace's working interest to Brigham Oil & Gas, L.P. (Brigham). The assignment and overriding royalty interest covered the Bakken Shale Formation in lands located in North Dakota (the Bakken Override). The Parties both argue the Agreement is not ambiguous and should be enforced according to its terms. However, RoDa argues the Bakken Override is included within Palace's obligation under paragraph 4(I) of the Agreement to "transfer, assign and deliver to the RoDa Parties all of the Palace Parties' interests, in those interests, properties and assets" in exploratory acreage or held-by-production acreage in

North Dakota. Palace argues the Bakken Override is not included among the interests listed in the Agreement and is neither exploratory acreage nor acreage held-by-production and, therefore, it is not encompassed by the terminology used by the Parties to describe the interests that Palace must transfer.

We conclude the district court magistrate judge correctly ordered Palace to convey the Bakken Override to RoDa. Exercising jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291, we accordingly AFFIRM.

## I. Background

1. *The Parties' Relationship and History*[1]

In April 2002, RoDa met with Palace to investigate potential oil and gas investments, which would be managed by Palace. After several discussions, RoDa provided Palace $25 million as an initial capital contribution. During the following years, RoDa invested nearly $2 billion dollars in Palace.

In approximately 2005, RoDa became concerned about its investments with Palace and retained consultants to investigate how Palace was using the money. As a result of the consultant's findings, RoDa requested transfer of title to several properties that Palace purchased with RoDa's investment money. Palace refused to transfer record title to any of the properties.

---

[1]These facts come from a prior Tenth Circuit Opinion involving the same parties. See Roda Drilling Co., v. Siegal, 552 F.3d 1203 (10th Cir. 2009).

In 2007, RoDa filed a complaint against Palace alleging fraud, breach of contract, and breach of duty with respect to its oil and gas investments. Palace filed several counter-claims against RoDa.

In 2008, RoDa sought a preliminary injunction against Palace, seeking transfer of all properties purchased by Palace with RoDa's investment funds. The district court magistrate judge granted the preliminary injunction, which was affirmed by this court. See Roda Drilling Co. v. Siegal, 552 F.3d 1203, 1215 (10th Cir. 2009).

2.    *The Agreement*

In 2009, RoDa and Palace (the Parties) entered into an Agreement in which they agreed to release their claims against one another. Section 4(I) of the Agreement provided for Palace to assign specified oil and gas properties to RoDa as follows:

> The Palace Parties further agree to transfer, assign and deliver to the RoDa Parties all of the Palace Parties' interests in those interests, properties and assets set forth in subparagraphs A-G below, which were acquired for the joint account of the RoDa Parties and the Palace Parties.[2] The parties agree that the Palace Parties' interests in those interests, properties and assets have a value as of July 1, 2009 as set forth in subparagraphs A-G below. The values for the Palace Parties' interests in the interests, properties and assets referenced in Subparagraphs A, B, and D, below, are based on the Palace Parties owning the interests/acreage reflected on Exhibit B-1 hereto . . . .
>
> . . .

---

[2]Palace has not asserted that the Bakken Override does not qualify as a property or interest acquired for the Parties' joint account.

In the event the Palace Parties own lesser interests than [is] reflected on Exhibit[] B-1 . . . then the Palace Parties shall pay the RoDa Parties upon demand an amount in cash equal to such value differential. In the event the Palace Parties own greater interests than [is] reflected on Exhibit[] B-1 . . . such that the values herein are understated, then the RoDa Parties shall credit such excess amount against the cash payments to be made by the Palace Parties under paragraph 9 of this Agreement.

> A. The Palace Parties' interests in all exploratory acreage wherever located . . .

> D. The Palace Parties' interests in all "held-by-production" acreage in North Dakota . . .

Aplt. App., at 447.

The Agreement further states that Palace's "interests in the exploratory acreage have an agreed value of $[redacted] million" and that Palace's "interests in all 'held-by-production' acreage have an agreed value of $[redacted] million." Id. at 448. These values are "based on . . . Palace . . . owning the interests/acreage reflected on Exhibit B-1" to the Agreement." Id.

Section 16 of the Agreement states that the Agreement's terms "shall be construed, interpreted, and governed by the laws of the State of Oklahoma." Id. at 466.[3]

3.   *The Dispute*

---

[3] Both Parties agree that the contract dispute in this case is governed by Oklahoma state law.

Shortly after they entered into the Agreement, a dispute arose concerning whether the Agreement requires Palace to convey its interests in the Bakken Shale Formation to RoDa. For the Parties' joint account, Palace acquired oil, gas, and mineral leases in the Bakken Shale Formation. In October 2005, Palace assigned its working interests[4] in the Bakken Shale Formation to Brigham. In making this assignment, Palace reserved an overriding royalty interest in the prospective oil and gas revenue that Brigham might generate from its working interests in the Bakken Shale Formation.

The Parties' dispute concerns whether the terms of the Agreement require Palace to transfer the Bakken Override to RoDa. In resolving this dispute, the district court magistrate judge rejected Palace's argument that an overriding interest is somehow excepted from the broad terms of the Agreement requiring Palace to transfer, assign and deliver to . . . RoDa all of Palace's interests in those interests, properties and assets in exploratory and held-by-production acreage in North Dakota. In support of this ruling, the court explained:

> The word "all" encompasses every interest Palace possesses in the particular land that is either exploratory or

---

[4] A working interest is defined in Oklahoma Statute, Title 52, Section 570.2(12) to mean the interest in a well entitling the owner thereof to drill for and produce oil and gas, including by not limited to the interest of a participating mineral owner to the extent [allowed by Oklahoma's conservation regulations.] *See also* Black's Law Dictionary 1745 (9th ed. 2009) (defining a working interest as "[t]he rights to the mineral interest granted by an oil-and-gas lease, so called because the lessee acquires the right to work on the leased property to search, develop, and produce oil and gas, as well as the obligation to pay all costs").

held-by-production acreage in North Dakota. The Parties' use of the word 'all' and the absence of any provision specifically excepting the Bakken Override from Palace's obligation to transfer evinces an intention that the Bakken Override be transferred. Any other interpretation places an unnatural construction on the language employed by the parties.

RoDa Drilling Co. v. Siegal, 2010 U.S. Dist. LEXIS 101704, at *9 (N.D. Okl. Sept. 10, 2010)

The district court magistrate judge also rejected Palace's argument that the Agreement provides for the transfer of only those properties listed in Exhibit B-1 to the Agreement. The magistrate judge reasoned that the Agreement does not link Palace's obligation to transfer interests to the agreed value the Parties assigned to Palace's interests, which is further supported by the recognition in the Agreement that Exhibit B-1 may be inaccurate or incomplete. Therefore, "Palace's attempt to cast the Exhibit B-1 list as the finite expression of the properties to be transferred must fail as being contrary to the language of the Settlement Agreement." Id. at *11.

## II. Analysis

1. *Standard of Review*

Both this Circuit and the Oklahoma Supreme Court have stated that "[t]he proper construction of a contract is a question of law [that is] review[ed] *de novo*." Penncro Assocs. v. Sprint Spectrum, *L.P.*, 499 F.3d 1151, 1155 (10th Cir. 2007); See also May v. Mid-Century Ins. Co., 151 P.3d 132, 140 (Okl.2006)

("Under Oklahoma law, the interpretation of a contract is a question of law reviewed *de novo*.").

2. *The Unambiguous Agreement*

When sitting in diversity jurisdiction, this court applies the most recent version of the law articulated by the state's highest court. First American Kickapoo Operations, L.L.C. v. Multimedia Games, 412 F.3d 1166, 1172 (10th Cir.2005). In Oklahoma, "[i]f a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended."[5] Pitco Production Co. v. Chaparral Energy, Inc., 63 P.3d 541 (Okl. 2003). The Parties agree the Agreement is unambiguous as to the interests Palace is to convey to RoDa. We agree.

The granting clause, Section 4(I) of the Agreement, is neither ambiguous nor susceptible to more than one interpretation. Section 4(I) requires Palace to transfer, assign and deliver to RoDa "all of the Palace Parties' interests in . . . [t]he Palace Parties' interests in all exploratory acreage wherever located . . . [and] [t]he Palace Parties' interests in all "held-by-production" acreage in North Dakota. The phrases "exploratory acreage" and "'held by production' acreage" can only be understood as a shorthand reference to how mineral rights or

---

[5]By Oklahoma statute, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." 15 O.S.1991 § 160.

leasehold or working interests are held. If mineral rights are held by production from producing wells on a lease or within a unit, another entity cannot obtain a present right to explore for oil and gas. See French Energy, Inc. v. Alexander, 818 P.2d 1234, 1238 (Okl.1991).

French involved a purchaser of an oil and gas lease at judicial sale who sued, seeking damages or, alternatively, rescission of lease and restitution, because the estate did not hold the interest that was the subject of the sale. Shortly after its purchase of the lease, French learned the mineral rights it had purchased were subject to a pre-existing lease which remained in force based on production from another section within the unit. French demanded the return of its money. The estate refused arguing the doctrine of caveat emptor was dispositive of the issue and the estate could and did sell only what interest it had to sell. Id. at 1236.

The trial court granted summary judgment in favor of the estate, which was affirmed by the appellate court on grounds that French should have raised a breach of warranty argument and, having failed to do so, did not meet its burden to overcome the estate's motion for summary judgment. The Oklahoma Supreme Court granted certiorari and reversed the lower courts on the grounds of unjust enrichment. In explaining its ruling, the court noted, "[i]n the present case, the mineral rights French thought it was purchasing were being held by production from within the unit. The contract, in clear and unambiguous terms, purported to

convey the present right to explore for oil and gas. However, there was nothing to convey. To allow [the estate] to keep the bonus money in exchange for nothing would result in them being substantially and unjustly enriched." Id. at 1238.

Looking to the French case to differentiate and assist in defining the phrases at issue in this case, we understand the phrase "'held by production' acreage" to refer to mineral rights or leasehold or working interests which are held by production from producing wells. We understand the phrase "exploratory acreage" to refer to mineral rights or leasehold or working interests held by an entity possessing a present right to explore for oil and gas.

Therefore, we agree with Palace's argument that the Bakken Override is not a mineral right or a leasehold or working interest that can be explored or held by production. However, this is not the issue presented. The key issue is whether the Bakken Override is one of Palace's interests in an interest owned by Palace in a leasehold or working interest that can be explored or held by production. We conclude it is.

The Oklahoma Supreme Court defines an overriding royalty as "a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production. XAE Corp. v. SMR Property Management Co., 968 P.2d 1201, 1206 (Okl.1998)(citations omitted). As the owner of the Bakken Override, therefore, Palace owns a percentage of the working interest free of the burdens normally incident to the working interest, in

-10-

the Bakken Formation. No party argues that the Bakken Formation is anything other than exploratory acreage or held-by-production acreage in North Dakota.

It is true, as argued by Palace, that the nature of an overriding royalty interest is such that it attaches only when oil and gas are reduced to possession. Id. at p. 1207. However, neither the point of attachment nor the vesting of the overriding royalty owner's right to receive payment change the overriding royalty interest to anything other than an interest owned by Palace in Brigham's working interest in the Bakken Formation. Palace's overriding royalty interest was created from the working interest acquired by Palace for the joint account of RoDa and Palace. The Bakken Formation working interest was then assigned by Palace to Brigham, and the carved-out overriding royalty interest was reserved to Palace under the terms of the 2005 assignment.

Further and in addition to the reasons articulated by the district court magistrate judge, we conclude that, had the Parties desired to exclude the Bakken Override from Palace's transfer obligations, they could have limited Section 4(i)(A) and (D) to include only Palace's working interests in all exploratory acreage wherever located and Palace's working interests in all "held-by-production" acreage in North Dakota. Palace owns no working interests in the Bakken Formation, having previously conveyed this interest to Brigham. That, however, does not mean Palace owns no interest in any working interest covering the Bakken Formation. We will not rewrite a clear and unambiguous contractual

-11-

provision to provide Palace with the relief requested. See Simpson v. Farmers

Ins. Co., Inc., 981 P.2d 1262, 1266 (Okl.1999)("to rewrite clear and unambiguous

policy provisions . . . would require us to indulge in the sort of 'loose and ill-

considered judicial interpretation,' which we criticized in Max True Plastering,

1996 OK 28 at ¶ 24, 912 P.2d 861.")

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court magistrate judge's

decision requiring Palace to transfer its interest known as the Bakken Override to

RoDa.

Entered for the Court


Nancy D. Freudenthal
Chief District Court Judge